## 45947. SHEARER v. THE STATE.
### (376 SE2d 194)

GREGORY, Justice.

The appellant, Ouida Catherine Shearer, was found guilty but mentally ill of the murder of her husband, Thomas P. Shearer.[1] The evidence showed that appellant discussed killing the victim with her co-defendant Darren Ehling. The two agreed that appellant would let Ehling in her home while the victim was sleeping, Ehling would kill the victim, and they would make it appear as if a robbery had taken place. The appellant testified she changed her mind, and when Ehling arrived at her home she told him she did not want him to hurt her husband. The appellant testified that Ehling was "all strung out" and shot her husband over her protests.

The appellant and her two children testified that the victim physically and mentally abused them all. The appellant testified that she initially wanted the victim dead so that the abuse would cease, but could not go through with her plan.

1. Appellant first complains that numerous documents she sought from the state were not produced pursuant to her motion for exculpatory information under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). *Brady* holds that suppression by the prosecution of evidence favorable to the accused which is material to either guilt or punishment violates due process. It does not require pre-trial disclosure of materials sought under a *Brady* motion, nor is there a *Brady* violation where information sought becomes available to the accused at trial. *Castell v. State*, 250 Ga. 776 (2) (301 SE2d 234) (1983).

It is apparent that the appellant sought to use her *Brady* motion as a discovery tool. However, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . ." *Weatherford v. Bursey*, 429 U. S. 545, 559 (97 SC 837, 51 LE2d 30) (1977). Additionally, most of the information contained in the documents sought became available to appellant either prior to or during trial. Appellant has failed to show that any information which she did not receive is exculpatory to her.

2. Next, appellant complains that the trial court erred in denying her pre-trial motion to disclose any agreements which had been made by the state with three witnesses who knew of the plan to murder the victim. Appellant alleges the state agreed to refrain from prosecution in exchange for their testimony. Appellant maintains such agreements would bear on the credibility of the witnesses at trial and disclosure was mandated under *Giglio v. United States*, 405 U. S. 150 (92 SC

---

[1] The crime was committed on January 23, 1987. Appellant was tried in July 1987, and the verdict was returned on July 25, 1987. Appellant's motion for new trial was denied on May 10, 1988. Her appeal was docketed in this court on June 29, 1988, and submitted to us on briefs on October 3, 1988.

763, 31 LE2d 104) (1972).

However, the record shows that appellant cross-examined each of these witnesses regarding any agreement they had with the state. One denied any agreement existed. The other two testified that a police officer had told them they would not be prosecuted if they told the truth.[2] Thus the information sought which bore on the credibility of the witnesses was elicited during cross-examination. Appellant has failed to show that she was harmed by not having this information at her disposal prior to trial.

3. Appellant has failed to show the trial court abused its discretion in denying her motion for severance. *Allen v. State*, 255 Ga. 513 (340 SE2d 187) (1986).

4. Appellant complains the trial court erred in failing to strike the testimony of an investigating officer whom appellant alleges testified from his incident report rather than using the report to refresh his memory. Even if the witness read from his notes, it is clear from the transcript that he was doing so to refresh and assist his memory. OCGA § 24-9-69. What was written in the report was a reflection of the witness's memory. It was the witness's memory which was the proffered evidence, not what was written on the paper.

5. Appellant alleges the trial court erred in allowing the state to plead entrapment by its own witness and cross-examine that witness, maintaining that witness did not make a prior inconsistent statement. At trial appellant's minor daughter, Letina Mikell, testified on behalf of the state. Initially this witness testified on direct examination that Ehling came to their house, handcuffed her to the shower rod and within "a couple of minutes" she heard the shot which killed the victim. While still on direct the witness testified that it was a "pretty long time" and "around an hour" between the time she was handcuffed and the time she heard the shot. As there was clearly an inconsistent statement, the trial court did not err in allowing the state to cross-examine the witness. OCGA § 24-9-81.

6. Appellant argues the trial court erred in permitting a police officer to testify that questioning of the appellant ceased when she requested a lawyer because this is an impermissible comment on her silence. However, appellant failed to object to this testimony at trial and may not complain of it for the first time on appeal. *Boutwell v. State*, 256 Ga. 63 (5) (344 SE2d 222) (1986).

7. In enumeration of error number seven, appellant argues the trial court erred in allowing the state to impeach the testimony of Letina Mikell concerning her pre-trial statement to police without first complying with OCGA § 24-9-83. Contrary to appellant's asser-

---

[2] The police officer in question denied making these statements.

tion, the record demonstrates that the witness was shown the transcript of her pre-trial statement and the time, place and circumstances of the statement were called to her attention. The witness then denied making the statement to police. It was not then error for the state to offer testimony of a police officer present at the time Letina Mikell was questioned by police that Mikell had made the statement in question.

8. The trial court properly submitted the question of whether appellant withdrew from the crime to the jury. We do not agree with appellant that the state's evidence demanded a verdict of acquittal, and the trial court did not err in denying the appellant's motion for directed verdict. OCGA § 17-9-1.

9. (a) Appellant argues the trial court erred in admitting a videotape made of appellant's residence which was offered in evidence by appellant's co-defendant. The tape was made under supervision of police officers several hours after the crime was committed. Appellant maintains that the foundation for admission of the videotape required by *Allen v. State*, 146 Ga. App. 815 (247 SE2d 540) (1978), was not laid. We find it unnecessary to determine whether a proper foundation for the tape was laid because we find that appellant has failed to show she was harmed by the admission of the tape. She argues only that the tape was made during daylight whereas the crime was committed at night, and suggests that the scene "might" have been inaccurate.

(b) Appellant argues that the trial court erred in allowing the audio portion of the tape to be heard. However, the record indicates that the trial court ordered that the audio portion of the tape be turned off. The court reporter's note indicates that the tape was played with "the sound off." We find no merit to this argument.

(c) In a related enumeration of error appellant complains that the trial court erred in allowing her co-defendant's counsel to play a portion of the video-tape during his closing argument to the jury. Appellant maintains that because the jury was permitted to hear the audio portion of the tape, her motion for mistrial should have been granted.

Appellant objected to her co-defendant playing the audio portion of the tape during closing argument on the ground that he was offering the audio portion of the tape in evidence. However, as this was not the evidentiary phase of trial, any sound which the jury heard did not come in as evidence. Appellant's objection was not valid and was properly overruled.[3] Appellant then moved for a mistrial without stating any ground. She made no request for curative instructions to the jury. Assuming she intended to urge the same ground in her motion for mistrial as in the previously discussed objection, we find the mo-

---

[3] Another objection would have been that counsel was making an argument based on facts not in evidence. However, this objection was not made.

tion for mistrial was not valid. Furthermore, appellant has not shown harm. The record does not show what, if anything, the jury heard. We find the trial court acted within its discretion in denying the motion for mistrial. *Ladson v. State*, 248 Ga. 470 (3) (285 SE2d 508) (1981).

10. (a) In the nineteenth and twentieth issues raised, appellant argues the trial court erred in admitting certain rebuttal testimony. The state offered the testimony of a psychologist to rebut defense testimony regarding the appellant's sanity. Appellant does not object to the testimony elicited by the state on rebuttal, but to the testimony elicited on cross-examination of this witness by counsel for her co-defendant. However, we need not decide whether the admission of this testimony was error because the record indicates that the testimony to which appellant objected came in later without objection.

(b) Two psychologists examined the appellant and testified in rebuttal on behalf of the state. While cross-examining these witnesses, counsel for appellant's co-defendant made reference to reports the psychologists had made following their examination of appellant. Appellant argues this testimony should not have been admitted because the state failed to supply her with copies of this scientific report ten days prior to trial as required by OCGA §§ 17-7-210; 17-7-211. It is clear that these evaluations were not admitted into evidence. The exclusionary portion of the code sections in question applies only where the *state* seeks to admit scientific reports it has not timely provided to the defendant. The code sections do not prevent a co-defendant from cross-examining a witness with regard to content of a scientific report.

11. In her twenty-sixth enumeration of error, appellant argues the trial court erred in allowing her co-defendant to make his closing argument after appellant instead of before since the co-defendant offered evidence at trial before appellant did.[4] We need not decide whether the practice permitted by the trial court was error as appellant has waived consideration of any error on appeal by failing to object to the sequence of argument at trial. *Boutwell v. State*, supra.

12. Appellant argues the trial court erred in omitting from its charge on abandonment that the state had the burden of disproving abandonment of the conspiracy beyond a reasonable doubt. We have held that while it is error for the trial court to refuse a request to charge the state's burden of proof with regard to a defendant's affirmative defense, where no request is made the reviewing court looks to the instructions as a whole to determine whether error was committed. *Boyd v. State*, 253 Ga. 515 (322 SE2d 256) (1984). The record indicates that appellant did not request the charge in question. Having reviewed the charge as a whole, we conclude that the instructions

---

[4] The state made the opening argument at the close of the evidence. Counsel for appellant was then permitted to argue, followed by counsel for co-defendant, Darren Ehling. The state concluded.

adequately set out the law of abandonment and the state's burden of proof. We find no reversible error.

13. Appellant alleges nine instances of prosecutorial misconduct. Three of these instances were not objected to at trial and will not be considered on appeal. *Harper v. State*, 249 Ga. 519, 535 (292 SE2d 389) (1982). We have considered several of the issues raised elsewhere in this appeal and have found them to be without error. As to the remaining contentions, we conclude that even if error, it is highly probable they did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

14. After deliberations had begun the jury requested a recharge on the difference between "insanity and mental illness." In recharging the jury the trial court inadvertently stated that if it determined that appellant did not have the capacity to distinguish between right and wrong, or acted because of a delusional compulsion, "you may find the defendant guilty by reason of insanity." There is no contention that the trial court's original charge to the jury on this issue was incorrect. Because appellant failed to object to the recharge, it will not be considered on appeal. *Boutwell v. State*, supra.

15. Appellant argues that she is entitled to a new trial because the evidence overwhelmingly shows she was insane at the time she allegedly conspired to murder her husband. We have carefully studied the record in this case and conclude that a rational trier of fact could have found that appellant failed to prove by a preponderance of the evidence that she was insane at the time of the crime. *Brown v. State*, 250 Ga. 66 (295 SE2d 727) (1982).

16. The remaining issues raised by appellant relate to the admission of evidence. We have examined each of these contentions and conclude that they are either without merit, or that it is highly probable any error made did not contribute to the verdict. *Johnson v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 16, 1989 —
RECONSIDERATION DENIED MARCH 8, 1989.

*John M. Beauchamp, P. C. & Associates, Kermit S. Dorough, Jr.*, for appellant.

*Hobart M. Hind, District Attorney, John L. Tracy, J. Mark Shelnutt, Assistant District Attorneys, Michael J. Bowers, Attorney General, Andrew S. Ree*, for appellee.