S91A0310. THE STATE v. McCOLLUM et al.
(405 SE2d 688)

SMITH, Presiding Justice.

McCollum and others were indicted on several counts as a result of an altercation. The state filed a motion asking that the trial court prohibit the defendants from using peremptory strikes in a racially discriminatory matter. The motion was denied and the state appeals.

1. Since the order of the trial court, the United States Supreme Court has decided the case of *Edmonson v. Leesville Concrete Co.,* 59 USLW 4574, decided June 3, 1991. In that case, the Court held, generally, that the exclusion of any prospective juror by virtue of race would constitute an impermissible injury to that juror. 59 USLW 4578.

2. *Edmonson,* of course, was a civil action. While it may be that the United States Supreme Court may, in another case, prohibit a criminal defendant from exercising peremptory challenges to exclude jurors on the basis of race, it has not yet done so. Bearing in mind the long history of jury trials as an essential element of the protection of human rights, this court declines to diminish the free exercise of peremptory strikes by a criminal defendant.

*Judgment affirmed. All the Justices concur, except Hunt, Benham and Fletcher, JJ., who dissent.*

HUNT, Justice, dissenting.

I respectfully dissent because the inescapable conclusion from *Edmonson v. Leesville Concrete Co.,* 59 USLW 4574, decided June 3, 1991, is that no one, not even a criminal defendant, may exercise peremptory strikes so as to exclude jurors in a racially discriminatory manner. *Edmonson* makes it abundantly clear that the exercise of peremptory strikes by any party in any case, pursuant to a state or federal statute, in a state or federal courtroom, is "state" action. And, under *Edmonson,* when that action excludes a juror on the basis of race it may be challenged by the court, by the opposing party, or even by the juror and remedied.

*Edmonson,* however, is but the latest pronouncement of the fed-

eral courts leading to this result. Surely this result was forecast by *Batson v. Kentucky*,[1] itself. While the *Batson* majority sidestepped the issue: "We express no views on whether the Constitution imposes any limit on the exercise of peremptory challenges by defense counsel[,]" id., 106 SC at 1719, n. 12, the dissenting opinion of Chief Justice Burger reasoned:

> [T]he clear and inescapable import of this novel holding will inevitably be to limit the use of this valuable tool to both prosecutors and defense attorneys alike. Once the Court has held that *prosecutors* are limited in their use of peremptory challenges, could we rationally hold that defendants are not?

(Emphasis in original.) 106 SC at 1738 (Burger, C. J., dissenting). Moreover, as the Fifth Circuit Court of Appeals confirmed in *United States v. Leslie*, 783 F2d 541, 565 (5th Cir. 1986):

> [E]very jurisdiction which has spoken to the matter, and prohibited prosecution case-specific peremptory challenges on the basis of cognizable group affiliation, has held that the defense must likewise be so prohibited.[2]

The rule of *Batson* has proceeded from enforcing the equal protection rights of black defendants to those of white defendants and to those of jurors whose rights may be enforced by the state as well as the defendant. It has expanded from criminal cases to civil cases and from race to gender. One may legitimately question whether peremptory challenges will survive the enveloping application of the rule. Consider the observation of Judge Charles E. Moylan, Jr., writing for the Court of Special Appeals of Maryland in *Chew v. State*, 527 A2d 332 (Md. App. 1987):

> To hold that, in the jury selection process, the equal protection clause is available only to black defendants deprived of black jurors is philosophically indefensible. Once the protection is moved beyond that narrow base, however, there is no logically defensible way to contain it. Between the absolute abolition of the peremptory challenge, on the one hand, and

---

[1] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[2] Cognizable group affiliation may not be limited to those of the same race. In *United States v. De Gross*, 913 F2d 1417 (9th Cir. 1990), the 9th Circuit Court of Appeals prohibited the *defendant's* peremptory strikes which were based on gender, holding (a) peremptory challenges based on gender violate the jurors' equal protection rights and those rights may be asserted by the government and (b) a criminal defendant's peremptory challenge is state action.

the absolute refusal to look behind the unfettered use of the peremptory challenge, on the other hand, there may be no tenable middle ground.

Id. at 350.

The majority acknowledges the inevitable but prefers to await further instructions from Washington. In the meantime it reveres the defendants' entitlement to racially-motivated peremptory strikes as though it were of constitutional significance. But peremptory strikes, unlike the prohibition against racial discrimination, enjoy no constitutional foundation. Fundamental to *Edmonson* is the notion that racially-motivated strikes are just another form of racial discrimination which deserve no protection in the administration of justice in our courts. If this is true, it defies all logic to say that such strikes are prohibited only when exercised by the state.[3] I would reverse the denial of the state's motion.

BENHAM, Justice, dissenting.

I must respectfully dissent and must write separately to point out how the majority opinion, by refusing to hold that race is an impermissible consideration in determining a person's fitness for jury service, does unmistakably serious harm to the integrity of the jury selection process.

1. The majority opinion fails to take into consideration an almost unbroken chain of United States Supreme Court opinions leading to the abolition of race as a consideration for jury service: *Strauder v. West Virginia,* 100 U. S. 303 (25 LE 664) (1879); *Swain v. Alabama,* 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965); *Taylor v. Louisiana,* 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975); *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986); *Powers v. Ohio,* 499 U. S. __ (111 SC 1364, 113 LE2d 411) (1991); *Edmonson v. Leesville Concrete Co.,* 59 USLW 4574, decided June 3, 1991. It is evident from these opinions that in the area of jury service, the trend has been one of inclusiveness rather than exclusiveness.

In condemning racial discrimination in the jury selection process,

---

[3] This is the position of Justice Scalia's dissent as to the impact of the *Edmonson* majority opinion which he believes is more harmful than helpful to the minority defendant.
In criminal cases, *Batson v. Kentucky,* [cit.] already prevents the *prosecution* from using race-based strikes. The effect of today's decision (which logically must apply to criminal prosecutions) will be to prevent the *defendant* from doing so — so that the minority defendant can no longer seek to prevent an all-white jury, or to seat as many jurors of his own race as possible. To be sure, it is ordinarily more difficult to *prove* race-based strikes of white jurors, but defense counsel can generally be relied upon to do what we say the Constitution requires. So in criminal cases, today's decision represents a net loss to the minority litigant. (Emphasis in original.)
*Edmonson,* supra at p. 4582 (Justice Scalia, dissenting).

the United States Supreme Court has highlighted not only the harm to the parties, but also the harm done to the jury selection process itself by the exclusion of prospective jurors on the basis of race. Justice Kennedy, writing for the majority in *Powers*, supra, 111 SC at 1368, said that *Batson* "was designed to serve multiple ends." One of those ends must be to allow ordinary citizens to participate in the administration of justice, which Justice Kennedy described as "one of the principal justifications for retaining the jury system." Id. He went on to state the holding in that case:

> the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. [Id. at 1370.]

The most recent case applying the principles which are apparent in this trend toward inclusiveness is *Edmonson v. Leesville Concrete Co.*, supra, which prohibited race-conscious jury strikes in civil cases. The focus of the court's reasoning in *Edmonson* is on the harm done to jurors and to the justice system, and the court found that the harm was no less because the discrimination occurred in a civil case. Applying the same reasoning, it is obvious that the harm which racial discrimination in selecting a jury does to the integrity of the jury selection process is just as egregious whether it is done by the state or the defendant in a criminal trial or by the plaintiff or defendant in a civil trial.

2. While I would join Justice Fletcher's dissent to the extent it says *Edmonson* requires racial neutrality in jury selection under the United States Constitution, I would go one step further and also address the issue of the applicability of our state constitution to racially motivated peremptory strikes.

An important question which was raised in the enumerations of error, and briefed and argued by the parties, but not addressed by the majority opinion, and which needs to be addressed here, is whether Art. I, Sec. I, Par. XI, of the Georgia Constitution, which guarantees every accused a trial by an impartial jury, also protects all citizens from racial discrimination in jury service even to the extent of curtailing a defendant's use of racially-motivated peremptory strikes.

The majority's view fails to take into consideration the dynamic aspect of constitutional jurisprudence. Justice John Marshall put the matter of dynamic versus static jurisprudence in proper perspective in *McCulloch v. Maryland*, 17 U. S. 316, 407-415 (4 LE 579) (1819):

> We must never forget that it is *a constitution* we are ex-

pounding . . . a constitution intended to endure for ages to come, and, consequently, to be adapted to the various *crises* of human affairs.

Such a crisis was recognized in *Batson v. Kentucky*, supra, when the United States Supreme Court, considering the use of peremptory strikes by the state, employed the Equal Protection Clause of the United States Constitution to forbid the use of racially-motivated strikes by the state, and put in place a legal mechanism for preventing future abuse.

Recognizing the literal correctness of the majority's statement that the United States Supreme Court has not yet held that defendants in criminal cases are limited to race-neutral exercises of peremptory challenges, I believe it is incumbent on the highest appellate court in this state, in the exercise of our duty to defend and protect the integrity of the judicial process and, as a necessary part of it, the jury selection process, to look to our state constitution for the appropriate means of achieving that laudable goal. While state courts cannot afford less protection under the state constitution than is required under the United States Constitution, there is no prohibition against the states providing their citizens more protection under the state constitution than is provided under the federal constitution. *Creamer v. State*, 229 Ga. 511 (3) (192 SE2d 350) (1972). The authority to grant that protection in this case is found in Art. I, Sec. I, Par. XI, of our state constitution:

The right to trial by jury shall remain inviolate; . . . In criminal cases, the defendant shall have a public and speedy trial by an impartial jury; . . .

The language of that constitutional provision does not lodge exclusively with the defendant the right to trial by jury. Since the right to a jury trial includes the right to a jury drawn from a fair cross-section of the community (*Taylor v. Louisiana*, 419 U. S. 522 (95 SC 692, 42 LE2d 690) (1975)), then the right to fair and impartial jury selection belongs to the community as well as the defendant.

The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. [*Batson*, supra at 107.]

The injury [from discriminatory jury selection] is not limited to the defendant — there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts. [*Ballard v. United States*, 329 U. S. 187, 195 (67 SC 261, 91

LE 181) (1946).]

Having both the duty and the authority to do so, we must declare it to be offensive to the Constitution of the State of Georgia for any party in a criminal proceeding to use race as a factor in determining a person's fitness for jury service.

3. Whether considered under the Georgia Constitution or under the United States Constitution as applied in *Edmonson*, the majority's conclusion that the right of a defendant in a criminal action to use peremptory strikes outweighs the right of prospective jurors to be considered for participation in the judicial system without consideration of race, is untenable. The unfettered exercise of peremptory challenges by either the defendant or the State to strike members of cognizable groups destroys the right to a jury drawn from a representative cross-section of the community. Peremptory challenges are not constitutionally protected fundamental rights — they are but one statutory tool in the effort to reach the constitutional goal of a fair and impartial jury.[4] While OCGA § 15-12-165 itself places no restrictions on the right to peremptory challenges, this court has recognized that the right is not without limits: in *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987), this court adopted the reasoning of *Batson*, supra, and imposed a restriction of racial neutrality on the state in criminal cases. Although we have in the past given criminal defendants great deference in their use of peremptory strikes, that deferential treatment must be abandoned when it begins to erode the public's confidence in the entire legal process. Racially motivated jury strikes are of such an egregious nature that the jury selection process will suffer irreparable damage if we fail to act.

The public interests in need of protection in this case are the integrity of the jury selection process, the very foundation of the truth-finding process, and the compelling need to encourage citizens to fulfill their citizenship requirements by freely serving on juries without the fear of having racial prejudice visited upon them.

> If the courts allow jurors to be excluded because of group bias, be it at the hands of the State or the defense, they would be willing participants in a scheme that could only undermine the very foundation of our system of justice — our citizens' confidence in it. [*State v. Alvarado*, 221 N.J. Super. 324 (534 A2d 440) (1987).]

Being convinced that the trial court erred in denying the State's

---

[4] "[T]here is no constitutional obligation to allow [peremptory challenges]." *Edmonson*, supra, 59 USLW at 4576.

motion, I would reverse. Consequently, I must dissent to the judgment of affirmance.

FLETCHER, Justice, dissenting.

As the majority notes, while the present case was pending in this court, the United States Supreme Court decided *Edmonson v. Leesville Concrete Co.*, 59 USLW 4574, decided June 3, 1991, reversing and remanding 895 F2d 218 (5th Cir. 1990). *Edmonson* holds that

> a private litigant in a civil case may [not] use peremptory challenges to exclude jurors on account of their race . . . [because] the race-based exclusion violates the equal protection rights of the challenged jurors.

*Edmonson*, 59 USLW at 4575.

As I interpret *Edmonson*, the United States Supreme Court has determined that the process of jury selection constitutes state action in that the objective of the selection process is determination of representation on a governmental body and "[t]he fact that the government delegates some portion of this power to private litigants does not change the governmental character of the power exercised." *Edmonson*, 59 USLW at 4577. Accordingly, the restrictions placed upon the exercise of racially based peremptory jury strikes by the equal protection component of the Fifth Amendment's Due Process Clause would appear to apply to all parties in both civil and criminal cases.[5]

Based upon the aforesaid interpretation of the holding in *Edmonson*, I feel compelled to apply that holding to the present case.[6] In so doing, I would find that the trial court erred in denying the state's motion to have appellees prohibited from using their peremptory strikes in a racially discriminatory manner and would reverse and remand the case to the trial court.

DECIDED JULY 12, 1991 —
RECONSIDERATION DENIED JULY 24, 1991.

*Michael J. Bowers, Attorney General, Harrison W. Kohler, Dep-*

---

[5] In his dissenting opinion, Justice Scalia points out that the majority decision in *Edmonson* "logically must apply to criminal prosecutions." *Edmonson*, 59 USLW at 4582.

[6] As it seemed apparent that there is no state action involved in an accused's exercise of his or her peremptory strikes, my initial observation concerning this case was more in line with the majority opinion and with Justice O'Connor's dissenting opinion in *Edmonson*, 59 USLW at 4579-4582. However, it now appears that a determination has been made that the rights of a defendant, whether a private litigant or an accused in a criminal trial, are subservient to the rights of prospective jurors who are not on trial and whose life, liberty, and property are not at stake.

*uty Attorney General,* for appellant.

*Robert H. Revell, Jr., Perry, Walters & Lippitt, Jesse W. Walters,* for appellees.

*Robert E. Wilson, District Attorney, Beauchamp & Associates, Kermit S. Dorough, Jr., The Garland Firm, Donald F. Samuel, Martin Brothers, John R. Martin,* amici curiae.