## S91A1401. WEEMS v. THE STATE.
### (416 SE2d 84)

WELTNER, Presiding Justice.

Glen Weems shot and killed Terrell Weaver with a handgun and shot Jairus Sims, Nikita Welch, and Roshane Favors. He was convicted of felony murder and three counts of aggravated assault. He was sentenced to life imprisonment and a term of years.[1]

1. Considered in the light most favorable to the verdict, the evidence was that on November 12, 1989, Weems was involved in a dispute over drugs, and that he later sought revenge by firing several shots from a pistol at a group of people outside an Atlanta residence as he drove by the group in his vehicle. Weems' handgun killed seven-year-old Weaver, and wounded two-year-old Welch, ten-year-old Favors, and seventeen-year-old Sims. We find that a rational trier of fact could have found beyond a reasonable doubt that Weems was guilty of the felony murder and the three aggravated assaults. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. (a) Weems' first enumeration of error is that the state violated *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986),

---

[1] The crimes were committed on November 12, 1989, and Weems was indicted on April 10, 1990. On August 31, 1990, a jury returned the guilty verdict, and on November 19, 1990, he was sentenced. A motion for new trial was filed on November 30, 1990. The court reporter certified the trial transcript on October 3, 1990. On May 17, 1991, the trial court denied Weems' motion for new trial, and on June 12, 1991, he filed his appeal. The clerk of the trial court certified the record on July 24, 1991, and on July 26, 1991, the appeal was docketed in this Court. The appeal was orally argued on October 15, 1991.

by exercising its peremptory strikes in a discriminatory manner.

Twenty-five of the original sixty jury panel members (42 percent) were black. After 4 jurors were excused for cause, 22 (39 percent) of the remaining 56 members of the panel from which the trial jury was selected, were black. The state exercised all ten of its peremptory strikes against black jurors. Of the twelve members of the trial jury, seven jurors (58 percent) were black.

The trial court heard explanations relative to striking black jurors, but did not make a finding as to whether the strikes were racially neutral. Rather, the trial court found that a prima facie case had not been made because (as we understand it) the percentage of blacks on the jury was greater than the percentage of blacks in the array.

(b) The action of the trial court would be consistent with the "determinative" aspects of *Batson*.[2] However, following *Batson* and our interpretation of it in *Aldridge v. State*, 258 Ga. 75 (365 SE2d 111) (1988),[3] there have been two developments that cast some question upon the prima facie requirement.

(i) The first is the holding in *Edmonson v. Leesville Concrete Co.*, 500 U. S. ___ (111 SC 2077, 114 LE2d 660) (1991), which indicates that a juror has a right *not* to be excluded (whether or not the strike was "determinative") on a racial basis by a racially motivated strike.

> [I]n a civil trial, exclusion on account of race violates a prospective juror's equal protection rights. [Id., slip opinion at 4578.]

---

[2] In *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987), we stated:
A defendant's prima facie showing of discrimination may be rebutted by proof "either that discriminatory purpose was not involved or that such purpose did not have a determinative [discriminatory] effect. [Cits.]" *Duren v. Missouri*, 439 U. S. 357, 368 (fn. 26) (99 SC 664, 58 LE2d 579) (1979). [Id. at 326.]

[3] There we stated:
The question then is whether this statistical data impacts upon the raising of the inference necessary to dictate a prima facie case of discrimination. We recognize the use of the phrase "other relevant circumstances" in *Batson* appears in a sentence dealing with an inference of racial motive. However, we also note that this inference is one which must lead to the result of discrimination. The result of the striking process in this case is interesting. . . . [A] net increase in the percentage of black persons occurred in both the jury of twelve and the alternates upon completion of the exercise of the peremptory strikes by each party.

Deciding cases through the use of raw numbers carries with it inherent dangers and possibilities of illogical or unjust results. We do not believe the U. S. Supreme Court intended to lead the courts into this kind of hazard. . . . [T]he larger question is whether [the state's use of its strikes] led to a prima facie case of discrimination. Viewing the resulting composition of the jury as an "other relevant circumstance," we cannot hold that it does. [Id. at 79.]

(ii) Second, in *Tharpe v. State,* 262 Ga. 110 (416 SE2d 78) (1992) we stated:

It can be argued that explanations by the state as to the striking of black jurors — who allegedly make minor mistakes on the jury questionnaire; or show signs of immaturity; or demonstrate certain aspects of eye contact — reflect certain stereotypical attitudes as to particular groups. Any such explanations should be given additional scrutiny by the trial court before they are found acceptable. [Id., slip opinion at p. 112.]

3. Because of these two developments[4] and of the prosecution's strikes, we remand the case so that the trial court may apply the "additional scrutiny" aspect of *Tharpe* in making a finding as to whether the strikes were racially neutral.

4. We have considered Weems' other claims of error. There was no error in the trial of the case that warrants a new trial, or other substantive relief.

*Judgment affirmed and case remanded for hearing. All the Justices concur, except Benham and Sears-Collins, JJ., who concur specially; Bell and Fletcher, JJ., who dissent as to Divisions 2 and 3, and to the remand.*

BENHAM, Justice, concurring specially.

During jury selection, the prosecution used all its peremptory strikes to remove black jurors. Although the trial court, relying on *Aldridge v. State,* 258 Ga. 75 (365 SE2d 111) (1988), ruled that appellant did not make a prima facie case of racially-motivated peremptory strikes, the prosecuting attorney stated on the record the reasons for the strikes. The trial court did not evaluate those reasons. In my view, two errors were committed: the trial court's holding, in reliance on *Aldridge,* that appellant did not make a prima facie case of racially-motivated peremptory strikes, and the trial court's failure to scrutinize and reject the reasons given by the prosecuting attorney.

1. In my special concurrence in *Hayes v. State,* 261 Ga. 439, 447 (405 SE2d 660) (1991), I suggested that this court should take that opportunity to disavow the mathematical approach taken in *Aldridge.* This case shows even more clearly the imperative necessity for abandoning the mechanistic approach to addressing issues of racial dis-

---

[4] Additionally, in *State v. McCollum,* 261 Ga. 473 (405 SE2d 688) (1991) we declined (by a vote of 4-3) to impose upon the defendant an obligation to cast racially neutral strikes. Subsequently, certiorari was granted in the United States Supreme Court in this case, 112 SC 370 (1991), and argument has been heard. The matter is now awaiting disposition.

crimination in the judicial process: the State used 100 percent of its peremptory challenges to remove blacks from the jury, but the trial court held that no prima facie case of discrimination was made because the percentage of blacks on the petit jury was greater than the percentage of blacks on the venire. It is now evident that *Aldridge* has bred disrespect for the holding in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), and will continue to impede our efforts to remove racial considerations from jury service. *Aldridge* is not only leading the courts to error as to the establishment of a prima facie case, it is confusing the trial courts and the prosecutors who appear before them as to what *Batson* requires in the exercise of peremptory strikes.

In *Hayes*, supra, the trial court made the same holding the trial court in this case made with regard to the failure of the defense to make a prima facie case under *Batson*, but the trial court in that case went on to hear the reasons for the strikes and to rule on their validity. The trial court in the present case, though it made the reasons a part of the record, declined to assess the reasons because of the mathematical application of *Aldridge*. We need no clearer indications that *Aldridge* has passed its time of utility and has become destructive to the ends of justice: it is time for this court to overrule *Aldridge* and to put in its place the policy suggested in my concurrence in *Hayes*, supra:

> Rather than deciding on a case by case basis whether a party is entitled to a hearing based upon a *prima facie* showing of purposeful discrimination, the better course to follow would be to hold a *Batson* hearing on any party's request whenever the other party exercises peremptory challenges to remove members of a cognizable racial group from the venire. This bright line test would ensure consistency by removing any doubt about when a *Batson* hearing should be conducted. Further, this procedure would ensure a complete record for appellate review. [Id. at 449.]

In the context of that policy, conducting a *Batson* hearing would include the trial court's evaluation of the reasons given by the prosecution.

2. Because the trial judge in the present case did not evaluate the reasons given by the prosecution for its peremptory challenges, this case should be remanded for consideration of those strikes under the standards this court has established. In *Gamble v. State*, 257 Ga. 325 (357 SE2d 792) (1987), this court issued the following caution:

> " '[R]ubber stamp' approval of all nonracial explanations, no

matter how whimsical or fanciful, would cripple *Batson*'s commitment to 'ensure that no citizen is disqualified from jury service because of his race.' *Batson*, 106 SC at 1723." [*Gamble*, supra at 327, quoting from *State v. Butler*, 731 SW2d 265 (Mo. App. 1987).]

In *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992), we noted as follows:

It can be argued that explanations by the state as to the striking of black jurors — who allegedly make minor mistakes on the jury questionnaire; or show signs of immaturity; or demonstrate certain aspects of eye contact — reflect certain stereotypical attitudes as to particular groups. Any such explanations should be given additional scrutiny by the trial court before they are found acceptable.

Finally, as I noted in my concurrence in *Mallory v. State*, 261 Ga. 625, 635 (409 SE2d 839) (1991), in considering those reasons,

I find instructive the suggestion in *Horton v. Zant*, ___ F2d ___ (11th Cir. 1991) (Case No. 90-8522, decided September 3, 1991, slip op. p. 22) that in evaluating [the] rebuttal it is appropriate to keep in mind that "testimony from the alleged discriminators should be viewed with a great deal of judicial scrutiny." [Cit.]

After applying the appropriate scrutiny, with appropriate awareness of racial stereotypes, to the reasons given in this case for using all ten peremptory challenges to remove black jurors, the trial court should enter an order either accepting the reasons, in which case this appeal would be reinstated if appellant desired, or rejecting the prosecuting attorney's explanations, in which case appellant would be entitled to a new trial.

SEARS-COLLINS, Justice, concurring specially.

In *Aldridge v. State*, 258 Ga. 75 (365 SE2d 111) (1988), we found that raw numbers and statistics are relevant to a determination of the existence of discrimination, but must be considered along with all other relevant circumstances. The statistics used in *Aldridge* were such that, in light of all other circumstances, we found they showed a lack of discrimination. However the same statistics may not lead to the same results in another case, depending on the make-up of the jury pool, the questions posed on voir dire, and other factors. In this case, the record shows that the trial court based its decision solely on a comparison of the racial composition of the venire jury pool to the

racial composition of the petit jury, and did not consider other possibly relevant circumstances. It is necessary to remand the case for consideration of other relevant circumstances, as they are required under *Aldridge*.

FLETCHER, Justice, dissenting to Divisions 2 and 3 and to the remand.

This case was tried in November of 1990. The United States Supreme Court did not decide *Edmonson v. Leesville Concrete Co.,* 500 U. S. ___ (111 SC 2077, 114 LE2d 660) (1991), until June 3, 1991 and this court did not decide *Tharpe v. State,* 262 Ga. 110 (416 SE2d 78) until March 17, 1992. The trial court should not have to go back in this case and re-evaluate an aspect of the case in light of either or both of those later decisions. Further, I would not alter the standards to be applied to challenges of jury strikes that are based upon *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) until the United States Supreme Court provides additional insight into *Batson.* Such insight may well be provided when that court decides *State v. McCollum,* 261 Ga. 473 (405 SE2d 688), cert. granted, (112 SC 370) (1991) which was argued before that court in February of 1992.

I am authorized to state that Justice Bell joins in this dissent.

DECIDED MARCH 20, 1992 —
RECONSIDERATION DENIED APRIL 1, 1992.

*Thomas, Kennedy, Sampson, Edwards & Patterson, Paul L. Howard, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, Carl P. Greenberg, Assistant District Attorney, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf, Staff Attorney,* for appellee.