## S92A1065. WILLIAMS v. THE STATE.
(426 SE2d 348)

CLARKE, Chief Justice.

Marcus Anthony Williams was convicted of malice murder, felony murder, armed robbery, burglary, attempt to commit rape, and possession of a knife during the commission of a crime. The trial court merged the felony murder conviction with the conviction for malice murder. The court then sentenced the defendant to life imprisonment for malice murder, and to consecutive terms of years for the remaining crimes.[1]

The evidence at trial shows that the defendant had been landscaping at the home of the victim, Faye Burd, on the day of the murder. He subsequently told police officers that he returned to the victim's home that evening in order to rob her. According to the defendant's statement, when the victim answered the door, he asked to use the telephone. The victim told him she was then using the telephone, but allowed him to use a mobile phone in the garage. When she walked away, the defendant pursued her, took a knife from a kitchen drawer, and stabbed her in the chest. He then removed the victim's underpants and hosiery, and placed them next to her body. Before leaving the house, the defendant hid the knife under a chair cushion. The defendant took $48 from the victim's purse as well as her car keys.

At the time of the defendant's arrival, the victim had been talking to her daughter on the telephone. The victim's daughter telephoned the police who apprehended the defendant in the victim's garage.

An autopsy revealed that the victim had been severely beaten, strangled and stabbed. There was no physical evidence that the vic-

---

[1] The crimes occurred on June 7, 1990. The defendant was indicted on November 20, 1990. The state sought the death penalty, and the guilt-innocence phase of the case was tried May 20-22, 1991. The jury was unable to reach a verdict as to the sentence to be imposed, and the trial court sentenced the defendant to life imprisonment for the crime of murder on May 24, 1991. The defendant filed a motion for new trial on May 31, 1991, which was denied on March 13, 1992. The case was docketed in this court on May 28, 1992, and submitted to us on briefs on July 10, 1992.

tim had been sexually molested, and the medical examiner who performed the autopsy opined that the victim's undergarments had been removed while she was either unconscious or dead as there were no defensive wounds to this area of her body.

1. The defendant in this case is a black man; the victim was white. The defendant argues that the trial court erred in denying his challenge to the state's use of its peremptory strikes based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). The record shows that eighteen of the forty-two prospective jurors, or 42 percent, were black, and that five of the twelve jurors, or 41 percent, selected to serve on the jury were black. The state used nine of its ten peremptory strikes against black prospective jurors; the defendant used two of his peremptory strikes to remove black jurors whom the state had accepted. While the trial court did not make a finding that the defendant had established a prima facie case of discrimination, the trial court did ask the state to "address the specific strikes individually."[2]

The state sought the death penalty in this case. At the hearing on the *Batson* motion, the district attorney stated that his concern had been to select twelve jurors who would be willing to impose the death penalty, and that eight of the nine black prospective jurors struck had expressed reservations or hesitancy about use of the death penalty. However, the record indicates that only two of these eight jurors expressed any reservations or hesitancy about the death penalty. The state argues that much of this hesitancy was subjective, in the form of long pauses or glancing around the courtroom. However, this "hesitancy" was not explored by the state beyond standard questions concerning the death penalty, and each of the six jurors in question answered that they were not opposed to the death penalty and could impose this punishment if the evidence presented at trial justified it.

The state also posited that some of the jurors had been struck because of convictions for driving under the influence. An additional reason offered by the state was the relationship of some of the prospective black jurors with mentally retarded persons in view of the defense's position that the defendant is mentally retarded.

As was the case in *Ford v. State*, 262 Ga. 558, 559 (423 SE2d 245) (1992), and *Gamble v. State*, 257 Ga. 325, 326 (357 SE2d 792) (1987), the state's pattern of peremptory strikes establishes a prima facie case of racial discrimination, thus placing the burden on the state to

---

[2] The state argues that the *Batson* motion was untimely made in view of *Greene v. State*, 260 Ga. 472 (396 SE2d 901) (1990), and *State v. Sparks*, 257 Ga. 97 (355 SE2d 658) (1987). However, there is some evidence in the record to show that the parties agreed at the pre-trial conference, that the hearing on defendant's *Batson* motion would be conducted after the jury was sworn.

prove that the use of 90 percent of its peremptory strikes to remove blacks from the jury was not the result of racial bias. As in *Ford* and *Gamble*, "many of the explanations offered by the prosecutor could have applied with equal force to white jurors whom the prosecutor declined to strike." *Ford* at p. 559.[3] Further, other explanations given by the prosecutor were "suspect."[4] Id.

As we concluded in *Ford* at p. 560,

"[t]he explanations offered in this case are simply not the kind of concrete, tangible, race-neutral and neutrally applied reasons that can overcome the strong prima facie case established by the pattern of strikes. . . .

Thus, we reverse the trial court's finding that the state did not use its peremptory strikes in a racially discriminatory manner, and remand the case for a new trial.

2. In his statement to police the defendant admitted committing all crimes of which he was convicted except attempted rape of the victim. The defendant told police that, after he removed the victim's undergarments, he did not touch her body or unzip his trousers. As stated above, there was no medical evidence of molestation. On appeal, he challenges the sufficiency of the evidence supporting his conviction for attempted rape.

The evidence offered by the state is the mere fact that the defendant removed the victim's undergarments. We conclude that this is insufficient to support the conviction under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and therefore, the conviction must be set aside. However, with regard to the remaining convictions, we find that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes charged. Id.

3. We conclude that the additional errors alleged are either without merit, or unlikely to occur on retrial.

*Judgment reversed and remanded. Benham, Fletcher and Sears-*

---

[3] The record shows that there was "hesitancy" toward the death penalty expressed by at least one white juror who was accepted by the state. Further, several white jurors who were accepted by the state noted that they either had mentally ill or retarded relatives or had worked with persons so afflicted.

[4] One DUI conviction used to explain striking a juror was 20 years old. The state struck one juror, in part, because he attended church with a lawyer who had recently tried a "notorious" death penalty case. However, the state failed to ask this juror whether he had any knowledge of this case, or to explore his relationship, if any, with the lawyer in question. The prosecutor also stated that he struck one juror, in part, because her sister had been killed, and the juror had stated that the assailant "had been let go by police." However, the record shows that the prosecutor, rather than the juror, made this statement, and that the juror stated that "deep in her heart," she believed the incident was "an accident."

*Collins, JJ., concur; Hunt, P. J., and Hunstein, J., concur in the judgment only.*

DECIDED FEBRUARY 16, 1993.

*Charles R. Sheppard,* for appellant.

*Michael C. Eubanks, District Attorney, Richard E. Thomas, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.