A92A1667. THOMAS v. THE STATE.
(430 SE2d 768)

McMurray, Presiding Judge.

Defendant was tried before a jury and convicted on two counts of armed robbery, two counts of violating Georgia's Firearms and Weapons Act and one count of aggravated assault. This appeal followed the denial of defendant's motion for new trial. *Held*:

1. Defendant contends the trial court erred in failing to grant his motion to assemble another jury panel, arguing that the State exercised six peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69).

Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41. *Zachary v. State*, 245 Ga. 2, 4 (262 SE2d 779); *Shaw v. State*, 201 Ga. App. 438, 439 (1) (411 SE2d 534). In the case sub judice, voir dire was not taken down, but the State's attorney stated that he used eight of his ten peremptory strikes to exclude prospective black jurors; that he used two peremptory strikes to exclude prospective black alternate jurors; that the panel comprised twenty-seven white persons and twenty-seven black persons; that a white female and a black male were struck for cause and that the jury was comprised of six white jurors, six black jurors and two black alternate jurors.[1] The State's attorney then explained the use of each of his peremptory strikes. These recollections do not provide a basis for appellate review as "[c]olloquies between court and counsel and argument of counsel, though included in the record, are not competent evidence of the facts observed therein, and do not suffice to make a proper record of facts required to establish a prima facie case of discrimination. *National Assn. &c. People v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957); *Johns v. State*, 166 Ga. App. 656, 657 (305 SE2d 405) (1983)." *Shaw v. State*, 201 Ga. App. 438, 439 (1), 440,

---

[1] The State's attorney also pointed out that defense counsel used 18 of 21 strikes to exclude prospective white jurors. Defense counsel did not challenge this statement. However, he responded that "we can select who we want to select without answering to anyone at this point." This is not an accurate assessment. "[T]he U. S. Supreme Court made it clear in *Georgia v. McCollum*, 505 U. S. ___ (112 SC 2348, 120 LE2d 33) (1992), that defendants have no more right to discriminate racially in the exercise of their peremptory challenges than prosecutors. . . ." *Davis v. State*, 263 Ga. 5, 7 (10), fn. 3 (426 SE2d 844).

supra. Consequently, since there is no amendment or supplement to the record to reflect the necessary facts pursuant to OCGA § 5-6-41 (f) or (g) and since there is no stipulation in the record as to facts pursuant to OCGA § 5-6-41 (i), defendant has not carried the burden to show by the record the facts necessary to prove a claim of racial discrimination. *Shaw v. State*, 201 Ga. App. 438, 439 (1), 440, supra. However, to the extent possible, we address defendant's contention that the State's reason for excluding panel member 11 (i.e., uncomfortable judging others) was arbitrary and that the State's explanations for excluding panel members 8, 12, 20, 38 and 44 (i.e., unstable employment or no employment) are unbelievable because unemployed white panel members were not excluded by the State.

The record contains no stipulation pursuant to OCGA § 5-6-41 (i) supporting defendant's claim that the State did not strike unemployed white panel members. Further, there is no amendment or supplement to the record pursuant to OCGA § 5-6-41 (f) or (g) reflecting the racial identity or employment status of any panel member. Nonetheless, the defendant (and apparently the dissent) relies on a document entitled, "Juror Biographical Data," to support defendant's claim that the State did not exclude unemployed whites from the panel. This reliance is misplaced. First, the "Juror Biographical Data" sheet does not list race.[2] Second, a party may not rely on allegations that are unsupported by evidence at trial or by the official record as supplemented pursuant to OCGA § 5-6-41. *Daniel v. State*, 170 Ga. App. 795 (3) (318 SE2d 218).

"The duty of deciding whether the defendant established intentional discrimination lies in the trial court. [Cit.] A trial court's finding of purposeful discrimination is a finding of fact which must be given deference by an appellate court. Ordinarily, great deference should be given to such a finding since it 'largely will turn on evaluation of credibility.' [Cit.] 'Thus, we may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous. [Cits.]' [Cit.]" *McCormick v. State*, 184 Ga. App. 687, 688 (362 SE2d 472). See *Gamble v. State*, 257 Ga. 325, 326 (5), 327 (357 SE2d 792). In the case sub judice, the State's attorney explained that he excluded panel member 8 because "he was unemployed and not in school at this particular time." The State's attorney explained that he struck panel member 12 because "she was unemployed [and because she was] seventy-three years old [and] demonstrated hearing problems." The State's attorney explained that he

---

[2] The "Juror Biographical Data" sheet lists 54 names and includes spaces for identification of address, occupation, employment, date of birth, home and business telephone numbers, county residence, years of education, prior jury service and marital status.

struck panel members 20 and 38 because these panel members had unstable work histories, i.e., they could not hold a job. The State's attorney explained that he struck panel member 44, an alternate juror, because she "was unemployed, had been employed for about a year prior to that, claims she did private duty nursing but there is nothing in her educational data, that would be eleven years in school, to indicate that any of that was in any way skilled or such that would offset her irregular unsteady employment history." The State's attorney explained that he excluded panel member 11 because "she told defense counsel that she was not comfortable judging others due to her beliefs." These explanations are concrete, tangible and race neutral. *Davis v. State*, supra. Further, there is nothing in the trial transcript or record indicating that the State's explanations were not neutrally applied. Compare *Ford v. State*, 262 Ga. 558, 559 (3) (423 SE2d 245). Consequently, we find no abuse in the trial court's finding that the State gave "adequate nonracial reasons for selection of the jury. . . ."

2. Defendant contends the trial court erred in allowing the State to introduce similar transaction evidence before offering evidence concerning the charges contained in the indictment. However, defendant failed to raise this issue at trial. He therefore may not complain of it for the first time on appeal. *Shearer v. State*, 259 Ga. 51, 52 (6) (376 SE2d 194).

*Judgment affirmed. Birdsong, P. J., concurs. Pope, C. J., Andrews and Johnson, JJ., concur specially. Beasley, Cooper and Blackburn, JJ., dissent.*

Pope, Chief Judge, concurring specially.

I concur with Presiding Judge McMurray's initial conclusion that the record is insufficient in this case "to show by the record the facts necessary to prove [defendant's] claim under *Batson*." *Shaw v. State*, 201 Ga. App. 438, 440 (1) (411 SE2d 534) (1991). For that reason, I agree that the judgment of the trial court must be affirmed.

I agree, as noted by Judge Blackburn, that the issue is not whether the record shows defendant established a prima facie case of discrimination. The preliminary issue of whether the defendant made a prima facie showing of intentional discrimination becomes moot where, as here, the trial judge made no ruling on whether defendant has made a prima facie showing of discrimination but the prosecutor nevertheless offered a race-neutral explanation for the challenges and the trial court ruled on the issue. *Hernandez v. New York*, 500 U. S. ____ (111 SC 1859, 1866, 114 LE2d 395) (1991); *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993). The issue of whether the defendant made a prima facie showing of discrimination, however, is but the first of three issues which must be evaluated in a *Batson* case. The

final two steps in an evaluation of a *Batson* challenge remain: on appeal the reviewing court must still determine whether the prosecutor adequately articulated a race-neutral explanation for striking the jurors in question and whether the trial court correctly determined whether purposeful discrimination was shown. Thus, the record must contain sufficient evidence from which the reviewing court may reach a conclusion concerning whether the trial court erred. Because the record in this case is insufficient to show the trial court erred in its ruling on defendant's *Batson* challenge, the trial court's ruling must be affirmed.

In this case, the explanation offered by the prosecutor for his peremptory strikes against black jurors was his concern about their employment status in that they were either unemployed or had a history of irregular employment. In response, defendant attempted to show that the prosecutor's explanation was pretextual because several white jurors had the same employment status or history. The record, however, is simply insufficient for this court to determine whether the trial court erred in rejecting defendant's argument. The record does not contain the transcript of the voir dire examination of prospective jurors from which the employment status of white jurors may be determined. As noted by Presiding Judge McMurray, the defendant failed to complete the record by any of the several methods provided by statute, such as amendment or supplement to the record pursuant to OCGA § 5-6-41 (f) or (g) or stipulation of the facts pursuant to OCGA § 5-6-41 (i).

Except for the colloquy concerning defendant's *Batson* motion, the only information in the record relevant to the issues raised in the motion is a document, apparently prepared by the superior court clerk, which purports to supply certain biographical information about each prospective juror. For some jurors who were excluded, the space provided for occupation is left blank, while for other jurors the form indicates "none" or "unemployed." In my opinion, this unsworn and incomplete information is simply an insufficient basis on which we may make any comparison of the employment status of those jurors who were excluded by the State and those who were not excluded in order to determine whether the trial court erred in rejecting defendant's argument that the State exercised its peremptory strikes in a racially discriminatory manner.

I am authorized to state that Judge Andrews and Judge Johnson join in this special concurrence.

ANDREWS, Judge, concurring specially.

I join in Chief Judge Pope's special concurrence. We are constrained by the authority of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) and its progeny to review peremptory

challenges to determine if they were racially motivated. Nevertheless, I agree with the assessment of Chief Justice Burger that *Batson* has substituted for peremptory challenges, "challenges short of a challenge for cause that are just a little bit arbitrary — but not too much." Id. at 128 (Burger, C. J., dissenting). How can our courts be expected to administer such a rule?

BEASLEY, Judge, dissenting.

All of the State's peremptory challenges were exercised against black jurors although there were an equal number of white jurors on the panel. Several of these members of the venire were stricken for the stated reason that they were unemployed or had unstable work histories. A number of white jurors also were unemployed, but the State did not articulate why this factor weighed against one race but not against the other.

In my view, the explanation given by the state is one of those "certain stereotypical attitudes as to particular groups . . . [which] should be given additional scrutiny by the trial court before they are found acceptable." *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992). Considering the strength of the prima facie case (see *Bess v. State*, 187 Ga. App. 185 (1) (369 SE2d 784) (1988)) in that all strikes from the equally populated panel were against black jurors, together with the absence of an offered distinction between the stricken jurors and the white jurors with similar employment circumstances, I cannot agree that the State's burden was met. Thus, I cannot join in the affirmance.

However, since it appears that the trial court did not give the matter the "additional scrutiny" required, the case should be remanded to that factfinder, as was done in *Weems v. State*, 262 Ga. 101, 103 (3) (416 SE2d 84) (1992), and *Berry v. State*, 262 Ga. 614, 615 (2) (422 SE2d 861) (1992).

BLACKBURN, Judge, dissenting.

I respectfully dissent. I cannot agree with the majority that the appellant has not presented a prima facie showing of discrimination in the state's exercise of all of its peremptory strikes against prospective black jurors, in light of the Georgia Supreme Court's recent decision in *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993) and other decisions hereinafter cited. In *Lewis* at 680, the Supreme Court, citing *Hernandez v. New York*, 500 U. S. ____ (111 SC 1859, 1866, 114 LE2d 395) (1991), held that " '(o)nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.' " Notwithstanding the decision in

*Lewis*, supra, the Supreme Court in *Gamble v. State*, 257 Ga. 325, 327 (6) (357 SE2d 792) (1987), found that where the state exercised all of its peremptory strikes against blacks, as in the instant case, a prima facie case of discrimination was clearly made. Inasmuch as the question of whether the appellant has completed the record sufficiently to establish a prima facie showing of discrimination is moot, the veritable issue is whether the state's explanations for its exercise of 100 percent of its peremptory challenges to exclude black jurors, were sufficiently racially neutral and related to this case to withstand a *Batson* challenge.

In rebutting prima facie evidence of racial discrimination, the prosecution must explain each peremptory challenge of a black prospective juror. "The burden [is] on the prosecutor to prove that the disproportionate exclusion of black jurors was not the result of the prosecutor's conscious or unconscious animus against black jurors but was instead mere happenstance." *Ford v. State*, 262 Ga. 558, 559 (2) (423 SE2d 245) (1992). "Hence, it is not a sufficient rebuttal simply to offer explanations which do no more than fail to prove the defendant's claim that the prosecutor acted, consciously or unconsciously, in a racially-discriminatory manner. That he so acted may be inferred by the circumstances establishing the prima facie case. The prosecutor's explanation must be strong enough to *overcome* the prima facie case." *Ford*, id. at 559. Moreover, the explanations offered must be "the kind of concrete, tangible, race-neutral and neutrally-applied reasons that can overcome the strong prima facie case established by the pattern of strikes and other factors. . . ." Id. at 560.

Although the trial court's findings are, of course, entitled to great deference, " ' "(r)ubber stamp" approval of all nonracial explanations, no matter how whimsical or fanciful, would cripple *Batson's* commitment to "ensure that no citizen is disqualified from jury service because of his race." *Batson*, 106 SC at 1723.' [Cit.]" *Gamble v. State*, supra at 327. Further, explanations by the state as to the striking of black jurors that reflect certain stereotypical attitudes as to particular groups should be given additional scrutiny by the trial judge before they are found acceptable. *Tharpe v. State*, 262 Ga. 110, 112 (6) (416 SE2d 78) (1992). " 'The explanation "need not rise to the level justifying exercise of a challenge for cause," but it must be "neutral," "related to the case to be tried," and a " 'clear and reasonably specific,' explanation of his 'legitimate reasons' for exercising the challenges." (Cit.)' [Cit.]" *Bess v. State*, 187 Ga. App. 185 (1) (369 SE2d 784) (1988). In *Berry v. State*, 262 Ga. 614, 615 (2) (422 SE2d 861) (1992), where, as in *Weems v. State*, 262 Ga. 101, 103 (2) (416 SE2d 84) (1992), the percentage of blacks on the jury exceeded the percentage of blacks on the array, the Supreme Court remanded the case to the trial court for a hearing on the issue of whether the prosecution's

strikes were racially neutral where the prosecution had used all of its strikes to exclude black jurors. In *Weems*, supra at 103, the Supreme Court further remanded the case "so that the trial court [could] apply the ' "additional scrutiny" ' aspect of *Tharpe* in making a finding as to whether the strikes were racially neutral," even though seven members of the trial jury (58 percent) were black. More recently in *Williams v. State*, 262 Ga. 732 (426 SE2d 348) (1993), the Supreme Court remanded the case for a new trial where the state exercised 90 percent of its peremptory strikes against prospective black jurors for reasons which could have equally applied to white jurors.

Although, in this case, the racial composition of the venire and the racial composition of the trial jury portrayed a 50-50 representation of black and white jurors, "nothing in *Batson* compels [a] court's conclusion that constitutional guarantees are never abridged if all black jurors but one or two are struck because of their race. On the contrary, *Batson* restates the principle that ' "(a) single invidiously discriminatory governmental act" is not "immunized by the absence of such discrimination in the making of other comparable decisions." ' [Cits.]" *Fleming v. Kemp*, 794 F2d 1478, 1483 (5) (11th Cir. 1986). In *Fleming* the court specifically stated that it "cannot agree that *Batson* may be rendered a priori inapplicable by a prosecutorial game of numbers." Id. at 1483. Moreover, the Supreme Court has recognized in *Aldridge v. State*, 258 Ga. 75, 79 (4) (365 SE2d 111) (1988), "[d]eciding cases through the use of raw numbers carries with it inherent dangers and possibilities of illogical or unjust results. We do not believe the U. S. Supreme Court intended to lead the courts into this kind of hazard. Using numbers as the only criteria under *Batson* would mean that if the panel of 42 was composed of 42 black persons, a prima facie case becomes automatic." Id. at 79.

In the instant case, the prosecution used all ten peremptory strikes to exclude prospective black jurors. The strikes that are in question were exercised as follows:

Juror #8, a 20-year-old black male, was excluded because he was unemployed and was not in school, although he was previously employed as a beer truck driver.

Juror #11, a 31-year-old black female, was excluded because she indicated that she did not feel comfortable sitting on the jury, which is disputed by the defendant.

Juror #12, a 73-year-old black female, was excluded because she was unemployed, was last employed at a hotel, and according to the prosecution, demonstrated hearing problems because she answered a question inappropriately and asked the prosecutor to repeat himself.

Juror #20, a 19-year-old black female, was excluded because she held her present job for a short period of time at a local bank, worked for a clothing store for a short period of time, and was previously

unemployed.

Juror #26, a 63-year-old retired black female, was excluded because she had not been satisfied with the work of police officers in the investigation of burglaries at her home, which indicated that she was predisposed against the state.

Juror #30, a 57-year-old black male, was excluded because he supposedly had both a speech and hearing impediment demonstrated by inappropriate responses to 50 percent of the voir dire questions.

Juror #38, a 19-year-old black male, was excluded because he had been recently hired by Delta, and previously worked with Circuit City a few months earlier, which, according to the prosecutor, indicated an unstable job history.

Alternate #43, a 45-year-old black female registered nurse, was excluded because she appeared hostile and displayed a belligerent attitude.

Alternate #44, a 54-year-old black female was excluded because "she again was unemployed, had been unemployed for about a year prior to that, claims she did private duty nursing but there is nothing in her educational data, that would be eleven years in school, to indicate that any of that was in any way skilled or such which would offset her irregular unsteady unemployment history."

The defendant does not question the appropriateness of the prosecution's exercise of a peremptory strike against Juror #22, a 65-year-old black male and uncle of Wayne Williams, the individual prosecuted by the Fulton County D.A.'s office and convicted of the murder of two adults, and suspected of the murder of several children in the Atlanta area.

Arguably, the prosecutor's exercise of peremptory strikes against Jurors 11, 26, 30 and 43 were racially neutral and case related exercises. However the prosecution's exclusion of the remaining jurors based upon their lack of gainful employment is suspect and pretextual because other similarly situated jurors were not likewise excluded. Although the specific racial make-up of the trial jury as well as the race of each potential juror in the venire is not addressed in the record with the exception of the jurors excluded by the prosecution, 20 of the venire who were similarly situated, some of whom are white and were not gainfully employed, were not stricken by the prosecution. Particularly, juror #5, a 61-year-old housewife; juror #18, a 65-year-old homemaker; juror #19, a 42-year-old housewife; juror #25, a 44-year-old homemaker; juror #26, a 63-year-old retired female; juror #35, a 21-year-old male student; juror #36, a 67-year-old unemployed female; juror #41, a 64-year-old housewife; juror #45, a 70-year-old male retiree; juror #46, a 44-year-old housewife; juror #48, a 53-year-old retired female; juror #50, a 19-year-old student; juror #52, a 57-year-old retired male; and juror #53, a 39-year-old housewife. Fur-

thermore, the prosecution failed to exercise any peremptory strikes against six other members of the venire who indicated on the jury biographical data sheet that they were not employed. Here, as in *Gamble v. State*, supra, and *Ford v. State*, supra, "many of the explanations offered by the prosecutor could have applied with equal force to white jurors whom the prosecutor declined to strike." *Ford*, id. at 559. "A prosecutor's failure to explain the apparently disparate treatment of similarly situated white and black jurors certainly diminishes the force of his explanation for striking a black juror." Id. at 560, n. 1. Further the prosecution's reasons for the exclusion of prospective black jurors from the petit jury were not the kind of concrete, tangible, race-neutral, case related and neutrally applied reasons that can overcome a strong prima facie case established by the pattern of strikes exercised by the state. *Ford*, id. at 560.

In the recent case of *Bess v. State*, 207 Ga. App. 295 (427 SE2d 813) (1993), this court remanded the matter to the trial court for a hearing on whether the prosecution's exercise of 100 percent of its strikes against blacks was racially-neutral. However, in *Bess*, the trial court concluded, without conducting a hearing, that the state had met its burden regarding the neutrality of its exercise of the peremptory strikes based solely on a statistical analysis of the racial composition of the venire and the jury. Unlike *Bess*, the trial court in the present case held a pre-trial hearing on the *Batson* motion, at which time the court requested and received an explanation from the state on the exercise of each of its strikes. Whereas remand for a hearing was the proper remedy in *Bess*, in the instant case, the trial court's finding that the state did not use its peremptory strikes in a racially discriminatory manner should be reversed in light of the Supreme Court's decision in *Williams*, and the case remanded for a new trial.

I am authorized to state that Judge Cooper joins in this dissent.

DECIDED FEBRUARY 22, 1993 —
RECONSIDERATION DENIED APRIL 2, 1993

*Brian E. Steel*, for appellant.
*Lewis R. Slaton, District Attorney, William C. Akins, Barry I. Mortge, Assistant District Attorneys*, for appellee.