## S92A1217. STEWART v. THE STATE.
### (426 SE2d 367)

HUNT, Presiding Justice.

Donald Stewart was convicted of felony murder and sentenced to life imprisonment.[1] He appeals, alleging error in the trial court's charge to the jury, ineffective assistance of counsel, and improper argument on the part of the state. We affirm.

The jury was authorized to find the following facts: Stewart and the victim, Inez Day, became involved in an affair in the spring of 1989. Eventually, the defendant attempted to end the affair. The victim, however, began demanding that the defendant spend more time with her; she threatened to show up at his home, where he lived with his wife and two children, and telephoned his home at all hours. A few days before her death, the victim told the defendant that she was pregnant with his child.

On the morning of the victim's death, Stewart drove to Day's apartment to give her a ride to work. Finding that she was not there,

---

[1] The homicide occurred on August 21, 1991. Stewart was found guilty of felony murder on February 27, 1992, and sentenced to life imprisonment. His motion for new trial was filed on March 9, 1992, amended on April 24, 1992, and denied on June 3, 1992. The defendant filed his notice of appeal in this Court on June 16, 1992. The appeal was docketed on July 7, 1992, and argued on September 23, 1992.

he drove back toward his own home and found Day walking toward his house. An argument ensued. Stewart and Day drove to some property Stewart owned; he parked the car and the two continued to argue. The victim, according to Stewart, told him that he must leave his family, that he had to marry her and take care of their child, and that he would never see his son again. At some point, the defendant lost control and struck Day with his hand; he then picked up a pipe, which he placed against her neck. When Stewart realized that Day was dead, he put her body in a barrel, which he left on property owned by a family friend. Two days later, Stewart, accompanied by his wife, went voluntarily to the district attorney and confessed the crime.

1. After reviewing the evidence in a light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found the defendant guilty of the crime for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The defendant maintains that he received ineffective assistance of counsel because the public defender, after only a brief consultation with him, allowed him to make a statement to the police. To secure a reversal of conviction for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988). We agree with the trial court's findings that, given all the circumstances, the defendant's counsel's choice was tactical and considered, and that this strategy was not so clearly erroneous as to be ineffective. Since the defendant had already confessed to the district attorney, the public defender might have felt, as he testified, that the confession would be helpful to his client because it would present to the jury the obvious remorse of the defendant.

Further, given the fact that the defendant's confession to the district attorney established all of the elements of the murder, the defendant has failed to establish that the public defender's decision to allow the statement so prejudiced the defense as to affect the result of the trial. *Wadley v. State*, 258 Ga. 465, 467 (369 SE2d 734) (1988).

3. The defendant argues that the trial court erred in failing to grant his motion for a mistrial after the state improperly injected the issue of race into its closing argument. The record shows that the prosecuting attorney, in his closing argument, urged the jury *not* to allow race to be a factor in their decision. That remark concerns race and is, perhaps, irrelevant. However, to argue that such a statement is so inflammatory and prejudicial as to deny the defendant due process of law is to go against logic and common sense. If the jury heeds the

words of the prosecuting attorney, it does that which is proper and consistent with due process of law.[2]

4. The defendant argues that the trial court's sequential charge to the jury regarding choices of verdict was prejudicial in that it overemphasized malice murder and felony murder and precluded the jury from properly considering the option of voluntary manslaughter.

In *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), we held that some precision in the charge to the jury is required in cases where the evidence would authorize a conviction for either felony murder or voluntary manslaughter, and that in such cases a sequential charge requiring the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate.

> The "sequential" charge eliminates the jury's full consideration of voluntary manslaughter because, if it concludes a felony murder occurred, it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter. Instead, the trial court should instruct the jury so as to ensure adequate consideration of charges for both forms of homicide.

261 Ga. at 867.

The evil which *Edge* seeks to cure is not present in the case before us. An examination of the record reveals that the jury requested further instructions from the court concerning verdict alternatives and specifically asked the court 1) what constitutes serious provocation; 2) what is a reasonable interval for the voice of reason to return; and 3) what constitutes menace. Such questions, dealing as they do with the possibility of provocation or passion, indicate that the jury indeed considered voluntary manslaughter. The verdict of felony murder was, therefore, the product of adequate consideration

---

[2] Stewart is white; the victim was black. Objecting to the prosecutor's statement, Stewart's lawyer argued:

It is a violation of Mr. Stewart's constitutional rights under the 5th and 14th Amendments of the United States Constitution and under the law, and also violation of the Batson issue as it relates to jury selection and also covers arguing and injecting race. The prosecution is clearly prohibited under Batson from injecting and using race and we move for a mistrial on that basis.

On appeal, Stewart makes no *Batson (v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)) claim relating to jury selection and insists that his argument at trial addressed only the broader implications of *Batson.* This position is certainly supported by the trial court's statement for the record that "all black jurors were struck by the defense in this case." The state offered no objection to the makeup of the jury. The holding in *State v. McCollum,* 261 Ga. 473 (405 SE2d 688) (1991) had not been vacated by the U. S. Supreme Court, *Georgia v. McCollum,* 505 U. S. ___ (112 SC 2348, 120 LE2d 33) (1992) at the time of this trial. In any event, Stewart's argument concerning race was meritless.

of charges for both forms of homicide rather than of any prejudicial emphasis communicated by a sequential charge.[3]

5. Defendant's remaining enumerations of error are without merit.

*Judgment affirmed. Clarke, C. J., Fletcher and Hunstein, JJ., concur; Benham, Sears-Collins, JJ., and Judge Eugene Gadsden dissent.*

SEARS-COLLINS, Justice, dissenting.

I am not at all content with Division 4 of the majority opinion. In this case, the trial court gave the jury an improper sequential charge in its main instructions. After some deliberation, the jury requested further instructions concerning voluntary manslaughter and the possible verdict alternatives. The trial court then recharged the jury, again in an improper sequential fashion, on murder, felony murder, voluntary manslaughter, and involuntary manslaughter.

To affirm Stewart's conviction, the majority *affirmatively* concludes that the jury's questions about voluntary manslaughter show that the verdict of felony murder was *"the product of adequate consideration of charges for both forms of homicide rather than of any prejudicial emphasis communicated by a sequential charge."* (Emphasis supplied.) Majority p. 897. Such an affirmative conclusion simply is not supported by the record before this Court.

Although the jury's request for further instructions concerning voluntary manslaughter indicates that it gave that verdict some consideration, the jury's request for further instructions concerning verdict alternatives indicates the jury was confused about the verdicts it should consider. It is thus possible that, after the jury returned to the jury room following the court's sequential recharge, which violated the rule in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992) the jury decided that the sequential charge and recharge relieved it of the necessity of giving voluntary manslaughter any further consideration. The record thus shows that the possibility that the jury did not give voluntary manslaughter adequate consideration is at least equally as likely as the possibility that it did. For this reason, and because the jury reached its verdict in the sanctity of the jury room, it is untenable for the majority to affirmatively conclude that the jury's verdict was the result of adequate and proper consideration of murder and voluntary manslaughter. In truth, the majority's conclusion amounts to nothing more than speculation about the jury's deliberative process.

---

[3] That the recharge was itself sequential does not alter the fact that the jury in this case did go on to consider evidence which might authorize a verdict of voluntary manslaughter.

Moreover, if anything, the jury's questions about voluntary manslaughter demonstrate the need to reverse this appeal. Those questions indicate the jury had found some evidence of voluntary manslaughter. Thus, a proper charge on murder and voluntary manslaughter was critical to insure the jury's full consideration of a voluntary manslaughter verdict.

Because it is possible the jury did ultimately rely on the sequential charge and recharge and thus did not adequately and properly consider voluntary manslaughter, and because we should not affirm a conviction of murder based on the mere speculation that the jury itself cured a critical defect in the trial court's charge, I dissent. This Court ought to forthrightly apply the rule we established in *Edge*, supra, when the circumstances so require, as in the present case.

I am authorized to state that Justice Benham and Judge Eugene Gadsden join in this dissent.

DECIDED FEBRUARY 25, 1993 —
RECONSIDERATION DENIED MARCH 18, 1993.

*Michael Mears, Mary Erickson* for appellant.
*Robert E. Wilson, District Attorney, Thomas S. Clegg, Barbara B. Conroy, Assistant District Attorneys, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf, Assistant Attorney General,* for appellee.