A97A0806. SHERMAN v. THE STATE.
(485 SE2d 557)

ELDRIDGE, Judge.

Appellant James Sherman was charged in a five-count indictment with the offenses of armed robbery (Count 1), possession of a

firearm during the commission of certain felonies (Count 2), armed robbery (Count 3), possession of a firearm during the commission of certain felonies (Count 4), and possession of a firearm by a convicted felon (Count 5). Counts 1 and 2 arose out of the alleged armed robbery of a Smile Gas Station, Inc., and Counts 3 and 4 arose out of the alleged armed robbery at a Crown-Fast Fare, Inc. ("Crown-Fast Fare") convenience store. Both armed robberies occurred on September 25, 1994, in Richmond County.

1. Appellant contends that the trial court erred in failing to direct a verdict because appellant's identity as the perpetrator of the crimes in Counts 3 and 4 of the indictment had not been proven beyond a reasonable doubt.

"A directed verdict of acquittal is proper only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. OCGA § 17-9-1 (a). On appeal we must view the evidence in the light most favorable to the verdict, [Sherman] no longer enjoys the presumption of innocence, and we do not weigh the evidence nor judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve." (Citations and punctuation omitted.) *Thompson v. State*, 210 Ga. App. 655, 656 (436 SE2d 799) (1993).

In the case sub judice, the following evidence was shown. Dye, who was employed by the Crown-Fast Fare convenience store the night of the armed robbery and was the victim of such offense, gave the deputy sheriffs who responded to the call a description of the perpetrator. Dye described the perpetrator as being 5′10″ or 5′11″ tall and weighing 160 pounds; appellant's height is approximately 6′1″, and appellant weighs considerably more. However, Dye testified at trial that he stands on an eight-inch platform behind the counter and that it was hard to judge heights "when you're looking down."

Four days after the armed robbery of the Crown-Fast Fare convenience store, Dye was requested by the sheriff's department to look at some mug books in order to try and identify the man who had robbed him at gunpoint. Dye was unable to pick out a photograph of the individual who had robbed him, but was able to pick out an individual who resembled the individual so closely "he could have been his brother." Dye testified that he was aware at the time that the individual he had picked out was not the perpetrator of the crime, but only someone who looked very similar to the perpetrator.

On March 6, 1995, the sheriff's department asked Dye to view a photographic lineup in order to attempt to identify the perpetrator. Dye picked out two individuals who he thought could have been the perpetrator, one of whom was the appellant.

At trial, Dye was able to identify the appellant as the perpetra-

tor of the crime with "99 percent certainty." Dye further testified that the picture he was shown during the photographic lineup was not "that great a picture of him," and that both the individuals he picked out "had a long face, and they both [were] about the right age and about the same build"; however, it was clear to Dye, with 99 percent certainty, that the appellant was the perpetrator when he actually saw the appellant in person. Further, Dye testified that he saw the perpetrator come in the door of the store and went up to meet him; that the perpetrator went back to the beverage cooler, got a Pepsi, and came back up to the cash register; that even though he only saw the perpetrator's face briefly, the perpetrator was not wearing a mask and he had a clear view of his face. Dye then testified that, when he looked back up after he rang up the sale, the appellant had a gun pointed at him and directed him to open the register and lie down on the floor. Dye testified that after he lay down on the floor, the appellant took money from the register, as well as his wallet, and left the store.

Thus, the trial court did not err in denying appellant's motion for directed verdict, as the evidence in the case sub judice is more than sufficient for a rational trier of fact to have found that appellant was, in fact, the perpetrator of Counts 3 and 4, and guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant next alleges that the trial court erred in denying appellant's motion for new trial, based on the trial court's denial of his motion in limine to disallow an in-court identification by Dye.

Appellant argues that because Dye was unable to accurately describe the perpetrator to the police and identify the appellant in a photographic lineup, any in-court identification would be analogous to a one-person pretrial lineup and would have to meet the criteria set forth in *Pack v. State*, 182 Ga. App. 618 (356 SE2d 557) (1987), which sets forth the test to determine if the pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification at trial. We disagree.

"Because pretrial identification procedures occur beyond the immediate supervision of the court, the likelihood of misidentification in such cases increases, and courts have required that pretrial identification procedures comport with certain minimum constitutional requirements in order to insure fairness." (Citations and punctuation omitted.) Id. at 619. In order to ensure that such minimum constitutional requirements are met, the Supreme Court of the United States has established a two-part test. See *Goswick v. State*, 150 Ga. App. 279 (257 SE2d 303) (1979). Such two-prong test is to ensure that the victim of the crime has some independent basis for

the in-court identification of the perpetrator other than a pretrial identification which was tainted in some fashion so as to make it impermissibly suggestive. However, in such analysis, the "taint" must come from the method used in the pretrial identification procedures.

Appellant has not suggested that there was any "taint" that would make the pretrial identification impermissibly suggestive, but has argued just the opposite, i.e., that the pretrial identification procedures were proper, and because the victim could not make a precise identification of the appellant as the perpetrator during these procedures, his in-court identification should somehow be declared "impermissibly suggestive." This reverse logic is simply not the law of this state. See *Neil v. Biggers*, 409 U. S. 188, 189 (93 SC 375, 34 LE2d 401) (1972).

In-court identifications always occur as "one man" identifications. Any inconsistency in the victim's in-court identification of the perpetrator and his pretrial identifications go only to the weight and credibility of his identification in court; such evidence is for the jury to weigh. *Lowe v. State*, 185 Ga. App. 606 (365 SE2d 479) (1988). Therefore, no error was committed by the trial court in allowing the victim to make an in-court identification of the appellant, and the " 'highly probable test,' i.e., that it is highly probable that the error did not contribute to the judgment," set forth in *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) need not be reached.

3. In his final enumeration of error appellant alleges that the trial court erred in denying his amended motion for new trial which raised the issue of ineffective assistance of counsel. We disagree.

"A defendant bears the burden of establishing that his trial counsel's performance was deficient and the deficiency prejudiced his defense to the extent that there was a reasonable probability the result of the trial would have been different but for defense counsel's unprofessional deficiencies. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Brown v. State*, 257 Ga. 277, 278 (2) (357 SE2d 590) (1987). The trial court's finding of effectiveness must be upheld unless clearly erroneous. *Powell v. State*, 210 Ga. App. 409, 414 (6) (c) (437 SE2d 598) (1993). A reviewing court need not address both components of an ineffective assistance of counsel claim if the appellant makes an insufficient showing of one. *Thompson v. State*, 191 Ga. App. 906 (1) (383 SE2d 339) (1989)." *Capers v. State*, 220 Ga. App. 869, 871 (470 SE2d 887) (1996).

The only claim appellant sets forth as demonstrating ineffective assistance of counsel is his trial counsel's statement when the trial court directed him to call his first witness; counsel stated, "[y]our Honor, Mr. Sherman, after hearing the evidence, has decided not to testify." The appellant did not put up any evidence. Clearly, this was

trial strategy on the part of counsel. Counsel's statement consisted of a free extra argument to the jury, and implicit within such statement was the implication that the appellant was ready, could put up evidence, but chose not to do so, because the defense felt that the State had failed to prove the appellant's guilt beyond a reasonable doubt. Such tactical choice was not so clearly erroneous as to be ineffective. *Stewart v. State*, 262 Ga. 894, 895 (2) (426 SE2d 367) (1993).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED APRIL 2, 1997.

*Stanley C. House*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.