A97A1774, A97A1775. JOSEPH v. THE STATE (two cases).
(498 SE2d 808)

RUFFIN, Judge.

John and Bonita Joseph were jointly tried for conspiracy to defraud the State (OCGA § 16-10-21) and Medicaid fraud (OCGA § 49-4-146.1 (b) (1)). A jury found them guilty of both offenses, and in these companion appeals the Josephs assert (1) that the trial court erred in overruling their peremptory strike against a prospective juror, and (2) that the trial court erred in denying their motion for mistrial following a purportedly improper comment by the prosecutor during closing argument. For reasons which follow, we affirm.

1. We find no merit in the Josephs' assertions that the trial court erred in finding that their peremptory strike of a prospective juror was racially motivated.

The transcript shows that the Josephs, who are African-Americans, exercised their peremptory strikes jointly. At the end of jury selection, the State challenged the racial composition of the jury on grounds that 11 of the Josephs' 13 strikes (85 percent) had been used to remove white members of a jury panel composed of 19 white persons (63 percent) and 11 African-Americans (37 percent). The trial court found that there was a prima facie case of racial discrimination.

During voir dire, it was shown that prospective juror no. 18, a white male, was a certified public accountant and partner in an accounting firm. He had a negative response to the word Medicaid, specific concerns about government waste and Medicare fraud, and numerous family members in law enforcement. It was also established that he had previously served as an alternate juror in a criminal case presided over by the same judge and had found the overall experience to be "[p]robably favorable."

Attorneys for both defendants gave as their reason for removing this juror that they did not want any accountants on the jury. Bonita Joseph's attorney explained that based on what the State indicated it intended to prove, there would be inferences of tax fraud. John Joseph's attorney added that the Josephs used three different accountants and part of his client's defense would involve placing blame on the accountants, so "[t]o have an accountant on the jury, to

me, would just be devastating."

The State responded, arguing that similarly situated African-American jurors had been allowed to remain on the jury, pointing to one who was a purchasing agent for Emory University and another who was a building supervisor for the City of Atlanta. John Joseph's attorney contested the comparison, responding that his concern related to prospective jurors who were CPAs or had an accounting background, and that the jurors referred to by the prosecution did not fit into this category. Bonita Joseph's attorney stated that they struck all three accountants.

Counsel for both defendants also argued that they struck juror no. 18 because he might have developed a bias in favor of the judge as a result of his prior service as an alternate juror. John Joseph's attorney explained: "[W]hile I think the Court does its very best to be fair and impartial, I don't think you and I see eye to eye on many things. . . . I do not want someone that's formed any type of potential allegiance or bias for Your Honor. . . . [I]f we wind up in controversy, I don't want him to come against my client because the juror has already been before Your Honor on another case."

The State characterized this reason as "[t]ransparent" and strongly pretextual. The prosecutor pointed out that there was no evidence supporting defense counsel's supposition that the venireman's prior jury service would result in bias. Following these arguments, the trial court found that the reasons advanced by the Josephs' attorneys were pretexts for striking the venireman on racial grounds and accordingly reseated juror no. 18 on the jury. The Josephs argue that this decision was clearly erroneous.

Because this Court has presented varying views concerning proper trial court procedure for addressing this issue, as well as the applicable procedures for appellate review of such decisions (see, e.g., *Wilburn v. State*, 230 Ga. App. 619, 624 (497 SE2d 380) (1998) (Eldridge, J., concurring specially)), we take this opportunity to review the pertinent authority.

In *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the United States Supreme Court continued its "unceasing efforts to eradicate racial discrimination in the procedures used to select [juries]." Id. at 85. The Court's decision in *Batson* was focused on establishing a process by which a trial court could decide if a criminal defendant carried his burden of proving that the prosecution engaged purposeful discrimination during the exercise of its peremptory strikes. In this regard, the Court held generally that a trial court "must undertake 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.' [Cit.]" Id. at 93. Because no procedure previously existed, the Court announced a three-part burden-shifting inquiry that the trial court must employ

in addressing a criminal defendant's assertion of discrimination. See id. at 96-98. Summarily stated, that inquiry required the trial court to determine (1) whether the defendant could establish a prima facie case of discrimination, (2) whether the prosecution articulated "a neutral explanation related to the particular case to be tried[,]" and (3) whether in light of the circumstances, the defendant established purposeful discrimination. Id. at 97-98. It is clear from the Court's opinion in *Batson* that this three-part test was to be applied by the trial court and was not a standard of appellate review. This is evidenced not only by the clear language in the opinion, but also by the fact that appellate review of the newly established procedure was not at issue.

"In [*Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992)], the United States Supreme Court extended its decision in [*Batson*] and held that the equal protection clause prohibits a criminal defendant from engaging in purposeful discrimination on the basis of race in the exercise of peremptory challenges." *Chandler v. State*, 266 Ga. 509 (2) (467 SE2d 562) (1996). In *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995), the Court revisited the three-part inquiry it established in *Batson* and extended in *McCollum*.

At issue in *Purkett* was a decision in which the Eighth Circuit Court of Appeals observed that in step two of the *Batson* inquiry " 'the prosecution must at least articulate some plausible race-neutral reason for believing that [the factors relied on for striking a juror] will somehow affect the person's ability to perform his or her duties as a juror.' " *Purkett*, supra, 131 LE2d at 838. Granting certiorari, the United States Supreme Court found the Eighth Circuit's characterization of the second step flawed: "The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, i.e., a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected. [Cit.]" Id. at 839.

Importantly, for the purpose of resolving the issue raised by Judge Eldridge's concurring opinion in *Wilburn*, supra, there is nothing in the *Purkett* opinion indicating that the Court was attempting to establish a three-part test for appellate courts to employ in reviewing a *Batson/McCollum* issue. Rather, the appellate court's role is simply to determine (1) whether the trial court properly implemented the three-part inquiry established under *Batson* and *Purkett*, and if so (2) whether the trial court's conclusion was clearly erroneous. See *Jackson v. State*, 265 Ga. 897 (463 SE2d 699) (1995). In *Purkett*, the Court merely found that the Eighth Circuit mischaracterized the trial judge's role in step two of the inquiry. See

*Purkett*, supra, 131 LE2d at 839 ("to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious" (emphasis omitted)).

We are not alone in our interpretation of *Purkett*. In his special concurrence in *Wilburn*, supra, Judge Eldridge cites numerous cases in which this Court has adopted interpretations similar to the one discussed here. And, in *Jackson*, supra, the Supreme Court of Georgia unanimously concurred that the *Purkett* analysis applies to trial courts. Accordingly, "as we are bound to follow *Jackson*, we cannot adopt Judge Eldridge's views on this issue even though they are helpful in analyzing the appellate considerations applicable in a *Batson/ McCollum* challenge." *Wilburn*, supra at 624 (Birdsong, P. J., concurring specially).

Returning to the merits of this case, the transcript establishes that the trial court correctly employed the three-part *Purkett* analysis and concluded under step three that the strike was racially motivated. Because the trial court correctly utilized the three-part test, our only duty at this juncture is to determine whether the court's conclusion is clearly erroneous.

In this regard, the transcript shows that despite the compelling nature of the Josephs' first explanation that they struck the juror because he was an accountant, the trial court concluded *for another reason* that the strike was racially motivated. Specifically, the trial judge, who had the opportunity to view the demeanor of the attorneys and judge their credibility, found that defense counsel's reason relating to prior jury experience was "the most ridiculous reason [he] ever heard in [his] life." After further argument by defense counsel, the trial judge concluded: "I'm putting [the juror] back on. I think it's pretextual, I'm putting him back on."

The trial judge's conclusion was not clearly erroneous. Though defense counsel stated that they were concerned with the juror's prior jury experience, there was *no evidence* before the trial court that the prior experience would have affected the juror's participation in this case. The record is clear that defense counsel's explanations concerning the prior experience were totally speculative. Counsel merely hypothesized circumstances that might arise at trial. In fact, the only evidence concerning the juror's prior jury experience was the juror's statement that he found the overall experience to be "[p]robably favorable." Under these circumstances, the trial judge could have totally discredited defense counsel's explanations for striking the juror and found that their peremptory strike was racially motivated. See *Jackson*, supra.

Finally, the dissent finds that "[r]egardless of [the] legitimacy

vel non of defendants' additional reason [concerning prior jury experience] for removing [the] juror, it did not dilute the force of their primary reason [that the juror was an accountant] or tend to show that the strike was racially motivated." Because the trial court's finding is entitled to great deference, we do not believe it is for us to weigh the proffered explanations or judge whether the second explanation diluted the force of the first explanation. The point is that the second reason given by defense counsel provided the trial court with at least some evidence that the strike was racially motivated. Under these circumstances, the trial court's decision was not clearly erroneous. See id.

2. The Josephs also assert that the trial court erred in failing to grant their motion for mistrial after the prosecutor stated during closing argument: "This case is not about race. The question of race was interjected by defense counsel during voir dire." The Josephs argued that the comment was improper because what occurred during voir dire does not constitute evidence, and there was otherwise no evidence concerning race presented at trial. Citing numerous questions concerning race posed by defense counsel during voir dire, the State argued that the Josephs raised the issue concerning race. After further argument by counsel, the trial judge instructed the jury, without objection, that the case had nothing to do about race. We find no error in the denial of the Josephs' motion for mistrial.

"In passing on a motion for mistrial because of an improper statement of a prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury. The refusal to grant a mistrial because of the improper remarks of the prosecutor is within the discretion of the trial court pursuant to OCGA § 17-8-75, and the decision will not be disturbed on appeal absent manifest abuse." (Citations and punctuation omitted.) *Bleckley v. State*, 214 Ga. App. 860 (2) (449 SE2d 351) (1994).

The trial court did not manifestly abuse its discretion here. We note, initially, the Josephs correctly assert that what occurred during voir dire is not evidence and therefore should not be raised in closing argument. See *Sterling v. State*, 267 Ga. 209, 212 (8) (477 SE2d 807) (1996). However, the Josephs raised no additional objection and invoked no additional ruling following the trial court's curative instruction to the jury. "Acquiescence completely deprives [them] of the right to complain further." (Citations and punctuation omitted.) *McKibbons v. State*, 216 Ga. App. 389, 392 (4) (455 SE2d 293) (1995). Furthermore, in *Stewart v. State*, 262 Ga. 894, 895 (3) (426 SE2d 367) (1993), where a prosecutor made a similar comment that the jury should not allow race to be a factor in their decision, our Supreme

Court held: "That remark concerns race and is, perhaps, irrelevant. However, to argue that such a statement is so inflammatory and prejudicial as to deny the defendant due process of law is to go against logic and common sense. If the jury heeds the words of the prosecuting attorney, it does that which is proper and consistent with due process of law." Id. at 895-896 (3).

*Judgments affirmed. Andrews, C. J., Birdsong, P. J., and Smith, J., concur. McMurray, P. J., and Eldridge, J., concur in the judgment only. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

Although I generally agree with the majority's analysis of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), and *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995), I cannot agree with its application of the "clearly erroneous" standard of review.

The majority affirms the trial court's ruling that the defendants' exercise of their peremptory strike against prospective juror no. 18 was racially motivated, because the secondary reason given by defense counsel in support of that strike "provided the trial court with at least some evidence that the strike was racially motivated." Even if this were so, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U. S. Gypsum Co.*, 333 U. S. 364, 395 (68 SC 525, 92 LE 746) (1948).

Here, the attorneys for both defendants gave as their reason for removing juror no. 18 that they did not want any accountants on the jury. They explained why. Facts stated in the majority opinion show that this was a compelling race-neutral justification for the strike and that the State's attempt at rebuttal failed.

As a secondary reason, Bonita Joseph's counsel offered that this juror might have developed a bias in favor of the judge as a result of his prior service as an alternate juror. The record reflects some animosity between this attorney and the trial judge, and counsel stated that "if we wind up in controversy, I don't want him to come against my client because the juror has already been before Your Honor on another case." After this ancillary basis was described by the court as "ridiculous" and by the prosecution as "strong[ly] pretextual," John Joseph's attorney stated that he too did not "like any juror that's already been in the same courtroom."

The prosecuting attorney later argued that Bonita Joseph's attorney's second reason for this peremptory strike (the venireman's prior jury service) was pretextual. When counsel again attempted to justify his fear as a basis for the strike, the court found that reason

pretextual and ordered the juror reseated even though counsel reminded the court of the primary reason: that this juror was a CPA. John Joseph's attorney elaborated that the CPA was a "[p]artner in a firm that represents small clients in closely held corporations" in dealings with the IRS and with the medical agency in supplying information. Counsel's opinion was that the juror would favor the State, considering the particular issues and the nature of the case, to be tried. Counsel observed, "The anger sparked between [the court] and [Bonita Joseph's attorney] . . . has caused this juror to be on there. . . . [I]t's going to hurt us tremendously." Bonita Joseph's attorney reiterated, "It would appear that my co-counsel, co-defendant, is going to be blaming an accountant or accountants for some of the problems that have arisen. . . . We are flying in the face of an accountant that will be on the jury. That accountant's reaction will be, 'Yeah, see, they blamed somebody else, they blamed us.' That's the reasons why [co-counsel] and I discussed this, wrote it down as being a strike. Also, the record will reflect, if this particular individual indicated that there was a Medicaid waste and abuse and that was a particular problem that he had — was aware of and bothered him. Your Honor, when you strike every single person that is involved in the accounting field, across the board, black and white, I suggest it is not pretextual. . . ."

In this case, unlike *Purkett*, supra, the proponent of the peremptory strike articulated a justification that was not only race-neutral but also unquestionably affected the venireman's ability to discharge his duties as a juror. There exists no basis for finding this explanation pretextual. The record shows that the trial court nonetheless found the strike to have been exercised in a racially discriminatory manner solely because the secondary reason propounded by counsel, though not racially suspect, was implausible. Regardless of legitimacy vel non of defendants' additional reason for removing this juror, it did not dilute the force of their primary reason or tend to show that the strike was racially motivated. The trial court's finding that the prosecution carried its burden of proving that the strike in question was racially motivated is clearly erroneous.

DECIDED MARCH 20, 1998 ▮

*Steven H. Sadow*, for appellant (case no. A97A1774).
*W. Michael Maloof*, for appellant (case no. A97A1775).
*Thurbert E. Baker, Attorney General, Charles M. Richards,*

406

*Senior Assistant Attorney General, Nancy B. Allstrom, Assistant Attorney General, J. Tom Morgan, District Attorney*, for appellee.