**FOURTH DIVISION
MCFADDEN, P. J.,
BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0427. PAGE v. THE STATE

PADGETT, Judge.

A jury found Ronald Page guilty of two counts of rape, two counts of aggravated sexual battery, two counts of incest, and two counts of child molestation.[1] Following the denial of his amended motion for new trial, Page appeals, arguing that the trial court erred in denying a motion in limine to allow discussion with the victim about extrinsic evidence of her character for untruthfulness. Further, Page argues the trial court erred in allowing a witness to testify who had been left off the witness list prior to trial. Moreover, Page argues the trial court erred in giving an *Allen* charge. Lastly,

---

[1] Page's two counts of child molestation merged with the two counts of rape for sentencing purposes.

Page raises several claims of ineffective assistance of counsel. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that Page had sole custody of his two daughters. In 2018, the family lived in a three-bedroom apartment in Douglasville, Georgia, with Page's niece and her four children. Page shared a bedroom with his two daughters.

Over the Thanksgiving holiday, Page was alone in the apartment with his two daughters. That day, Page instructed his oldest daughter ("the victim") to wash in the bathroom. When the victim came out of the bathroom, Page told the victim to sit on the couch and spread her legs open. Page then instructed the victim to go upstairs into one of the rooms, and he followed her. Once in the room, Page told her to take off her clothes. Although the victim said she did not want to take her pants off, she complied. Page then instructed the victim to lie down on a pillow, with her legs spread open—like how he had shown her on the couch—and pull her underwear to the side. Page then kneeled down beside the victim and started rubbing his penis on her vagina. The victim started to cry and asked if she could stop, to which Page told her no. The victim

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

testified that on this occasion, Page rubbed his penis on her vagina and inserted his fingers inside her vagina. She later said her father had put his penis in her vagina. After this incident, the victim confided in her friend Z. J. that her dad "took her in sexual ways."

A second incident occurred in December when the victim was kept home from school by herself. On that day, Page again told the victim to take her pants off. Page then repeated his actions from Thanksgiving, including placing his penis and fingers in the victim's vagina.

After the second incident, Page and his daughters moved to Charlotte, North Carolina, to live with his brother and his brother's wife. A few months after moving to North Carolina, the victim confided in her younger sister before telling her aunt and uncle about the incidents of abuse in Georgia. The following day, the victim's aunt and uncle went to the Charlotte police with the information. A detective then conducted a forensic interview of the victim. During the forensic interview, the victim said Page put his penis into her vagina. The case was turned over to detectives in Georgia, who obtained a warrant for Page's arrest.

Thereafter, Page was charged with two counts of rape, two counts of aggravated sexual battery, two counts of incest, and two counts of child molestation. Page was subsequently tried and convicted of all counts.

1. On appeal, Page argues that the trial court erred in precluding him from fully exploring the victim's character for untruthfulness. During trial, Page sought to introduce evidence that the victim lied to her family. The victim was asked on cross-examination if her aunt, with whom she lived, had asked her "to wear a shirt that said something about lying?" The victim responded affirmatively, saying she had to wear the shirt because she "was lying about school and phones and stuff." The prosecutor objected to the line of questioning, and the trial court sustained the objection.

A short time later, the trial court excused the jury and the witness in order to revisit its ruling. The trial court recognized that OCGA § 24-6-608 might, in some circumstances, permit inquiry into specific instances of a witness's conduct if probative of the truthfulness or untruthfulness of the witness. Defense counsel questioned the victim outside the presence of the jury, and the victim said that her aunt made her wear a shirt with the word "liar" on it due to instances in which she had lied about cell phones. The victim was not allowed to be on social media, but she used her aunt's old cell phone to post on Instagram. According to the victim, when asked, she

4

lied and told her aunt and uncle that she did not have the cell phone. In another incident, the victim brought home a cell phone she said she found at school. She did not tell her family about the phone, but police came the next day to retrieve it.

After hearing the proffer, the trial court ultimately precluded the line of questioning, finding that the victim's statement regarding a collateral matter was extrinsic evidence that could not be used to attack her character for truthfulness.

Thereafter, Page sought clarification of the trial court's ruling to the extent he sought to cross-examine the victim's aunt regarding the victim's "liar" t-shirt. The State argued the t-shirt was "extrinsic evidence that is . . . ancillary and irrelevant to the issues in this case." The trial court responded that its ruling remained unchanged, stating that the extrinsic evidence was not "sufficiently related to this case." Page's attorney then asked if the defense was allowed to ask about a witness's "overall character of truthfulness or untruthfulness?" The trial court said "you can ask a witness if they know the reputation in the community, but you've got to meet the foundation. I presume you're talking about the reputation of the victim in the community, which is kind of interesting since these girls have moved around so much. I don't know how you're going to get to that." Page then made no attempt to question the aunt about the victim's character for truthfulness or untruthfulness.

Prior to the close of evidence, the prosecutor, as an officer of the court, made the court aware of a case—*Gonzales v. State*—which recognized that testimony under OCGA § 24-6-608 (a) relates to a personal assessment of character rather than community feelings. See *Gonzales v. State*, 345 Ga. App. 334, 338 (2) (b) (ii) (812 SE2d 638) (2018) Id. at 338 (2) (b) (ii) (physical precedent only). The trial court concluded that *Gonzales*, which was physical precedent only, was not binding.[3] Page made no argument in response, and he did not seek to question the aunt further.

On appeal, Page argues that he was permitted under OCGA § 24-6-608 to attack a witness's character for truthfulness or untruthfulness and that the trial court's ruling "gutted" the defense. We find no reversible error.

OCGA § 24-6-608 governs the admissibility of evidence pertaining to the character and conduct of a witness. Subsection (a) of the statute provides, in relevant part, that a witness's credibility may be attacked "in the form of opinion or reputation" subject to the limitation that such "evidence may refer only to character for truthfulness or untruthfulness[.]" Subsection (b) provides:

---

[3] Not all three judges on the panel concurred in the judgment in *Gonzales*. Accordingly, under the version of Court of Appeals Rule 33 (a) in affect at the time that case was decided, the opinion is physical precedent only and citable only as persuasive rather than binding authority.

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness:

(1) Concerning the witness's character for truthfulness or untruthfulness; or

(2) Concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Under the express language of the statute, attacking a witness's character for truthfulness may not be done through the use of extrinsic evidence, but the trial court—in its discretion—may permit inquiry on cross-examination as to specific instances of conduct. See, e. g., *Douglas v. State*, 340 Ga. App. 168, 172 (2) (796 SE2d 893) (2017); *United States v. Dawson*, 434 F3d 956, 957 (7th Cir. 2006). In other words, there is a distinction between attempting to introduce extrinsic evidence to establish that a witness has been untruthful on a prior occasion versus inquiring into such conduct on cross-examination. See id. With regard to the former, there remains an

absolute bar on extrinsic evidence offered solely to prove the witness's general character for veracity. See *U. S. v. Gbenedio*, 95 F4th 1319, 1334 (III) (D) (11th Cir. 2024) ("There is an absolute bar on extrinsic evidence when the sole purpose for offering the evidence is to prove the witness's character for veracity. In other words, extrinsic evidence may never be admitted to prove that someone tends to lie.") (citations and punctuation omitted). Indeed, even if the witness were to lie on cross-examination concerning a prior occasion in which the witness lied about a topic unrelated to the case on trial or that witness's testimony while on the stand, the questioner would be required to accept the witness's answer and could not impeach that witness through the use of extrinsic evidence. See *United States v. DeSantis*, 134 F3d 760, 765 (II) (A) (6th Cir. 1998); see also *Sconyers v. State*, ___ Ga. ___ , ___ (4) (b) (Case No. S24A0139, April 30, 2024) (discussing the applicability of OCGA § 24-6-608 (b) to establish bias of a witness). "Put differently, the absolute prohibition applies only when extrinsic evidence is offered to prove that the witness is a *liar* in general. But it does not bar extrinsic evidence offered to prove that a witness *lied* on the stand." *Gbenedio*, 95 F4th at 1334 (III) (D) (emphasis in original).

Here, it is unclear from the record whether the trial court was exercising its discretion in curtailing Page's questioning regarding the victim's past incidents of

8

dishonesty or whether the trial court mistakenly believed such testimony was inadmissible as a matter of law. See, e.g., *Gresham v. State*, 181 Ga. App. 116, 117 (635 SE2d 316) (2006) (holding that failure to exercise discretion based on mistaken belief that no discretion exists can constitute abuse of discretion). Pretermitting whether the trial court erred in its ruling, we find the error harmless. The victim did testify about the incidents, explaining that her aunt made her wear a shirt "that said something about lying about school and phones and stuff." The victim's sister also testified that the victim had "lied before."

Page essentially argues that he should have been allowed to dig more deeply into the details of the victim's admitted lying about these collateral matters. Assuming that the trial court erred by mistakenly believing that it lacked discretion to allow the questioning, it is "highly probable that the error did not contribute to the verdict." *Smith v. State*, 318 Ga. 868, 874 (3) ( ___ SE2d ___ ) (2024) (citation and punctuation omitted), given that evidence of the victim's untruthfulness was already before the jury.

2. Although the State provided a witness list before trial, witness Z. J. was not listed. At trial, Page pointed out the omission. The trial court then said that it would give Page an opportunity to talk to the witness before she took the stand, and Page

responded "Thank you." On appeal, however, Page contends that the trial court erred in allowing Z. J. to testify.

OCGA § 17-16-8 (a) provides that, no later than ten days before trial, a prosecutor must provide the names, locations, birth dates, and phone numbers of witnesses to be called. The judge may allow for an exception to this requirement, in which case opposing counsel should be afforded an opportunity to interview the witness. See OCGA § 17-16-8 (a). Here, although Z. J. was omitted from the witness list, the trial court provided Page the opportunity to interview her prior to her testimony. Such a remedy is expressly contemplated by the statute. See *Grace v. State*, 210 Ga. App. 718, 721 (5) (437 SE2d 485) (1993) (the proper remedy for the omission of a witness's name from the witness list is a continuance, not the exclusion of the witness's testimony). Furthermore, Page agreed with this remedy at trial. And "a defendant cannot acquiesce in a trial court's ruling below and then complain about that ruling on appeal." *McNabb v. State*, 292 Ga. App. 395, 398-399 (2) (664 SE2d 800) (2008) (citation and punctuation omitted).

3. After the close of evidence and instruction to the jury, deliberations began around 2:15 p.m. and continued until 5:00 p.m., when the jury sent a note to the court, which stated "[w]e cannot reach a unanimous decision. How do we proceed?" At this

point, the trial court allowed the jury to recess for the night. The next morning, Page's attorney asked the trial court if it was "inclined to ask the jury what their numerical split is?" The trial court declined to do so; instead, the trial court instructed the jury to keep deliberating because they had only been deliberating for a "very short time."

A few hours later, the jury sent another note indicating the split was unchanged from the night before. After reading this note, the trial court indicated it planned to give the pattern *Allen* charge. Page objected and requested the trial court "poll the jury to see if any additional time would change their minds[.]" Page also moved for a mistrial. The trial court denied Page's request, including his motion for mistrial and gave the following *Allen* charge:

> Ladies and gentlemen, as you know, you've been deliberating this case for some time now. The Court deems it proper to advise you further in regard to the desirability of agreement, if possible.
>
> This case has been exhaustively and carefully tried by both sides. And it has been submitted to you for decision and verdict, if possible, and not for disagreement. It is the law that a unanimous verdict is required. While this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach an agreement, it is nevertheless necessary for all of the jurors to examine the issues and questions submitted to them with candor and fairness and with a proper

11

regard for and difference to the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment.

Each juror should listen to the arguments of the other jurors with a disposition to be convinced by them. If the members of the jury differ in their view of the evidence, the difference of opinion should cause them all to scrutinize the evidence more closely and to re-examine the grounds of their opinions.

Your duty is to decide the issues that have been submitted to you, if you can conscientiously do so. In conferring, you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for taking up and maintaining, in a spirit of controversy, either side of a cause.

You should bear in mind at all times that, as jurors, you should not be advocates for either side. You should keep in mind the truth as it appears from the evidence, examined in the light of the instructions of the [c]ourt.

You may, again, retire to your room for a reasonable time and examine your differences in a spirit of fairness and candor and try to arrive at a verdict.

As instructed, the jury resumed its deliberations and, sometime later, reached a unanimous verdict, finding Page guilty as to all counts. The trial court then polled the jury and confirmed that the verdict was unanimous.

Page argues that the trial court erred in giving the *Allen* charge over trial counsel's objection. In a related argument, Page contends the trial court erred in overruling his motion for mistrial and request for polling. We find no error.

"When a jury reports difficulty in reaching a unanimous verdict, the decision of whether to give an *Allen* charge is committed to the sound discretion of the trial court, and we review the decision to give such a charge only for an abuse of discretion." *Marshall v. State,* 361 Ga. App. 357, 359 (1) (864 SE2d 469) (2021) (citation and punctuation omitted). "Indeed, the determination of whether a jury is hopelessly deadlocked is a sensitive one best made by the trial court that has observed the trial and the jury." Id. at 359 (1) (citation and punctuation omitted). This Court has explained that the giving of an *Allen* charge "amounts to an abuse of discretion when the terms of the charge itself, or the circumstances in which it is given, are coercive, so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Contreras v. State,* 314 Ga. App. 825, 826 (2) (726 SE2d 107) (2021).

The language of the *Allen* charge given in this case is *identical* to Georgia's pattern instruction regarding a deadlocked jury, and our Supreme Court has already approved it. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.70

13

(Hung Jury) (2024); see also *Bannister v. State,* 306 Ga. 298, 296-297 (3) (c) (830 SE2d 79) (2019). Thus, to the extent Page contends that certain phrases in the *Allen* charge as given are inherently coercive, his argument fails. Instead, Page must show that the *Allen* charge was coercive due to the *circumstances* in which it was given. *Marshall*, 361 Ga. App. at 362 (1). The Supreme Court has explained that

> [f]actors in determining whether requiring further deliberations was coercive include the length of trial, the length of deliberations before the jury indicates that it is deadlocked, the language of the jury's notes, the progress of the jury, the language of the *Allen* charge[,] and other instructions regarding deliberations, the length of additional deliberations after the alleged coercion, whether the jury found the defendant not guilty of any charges, and the polling of the jury.

*Smith v. State,* 302 Ga. 717, 721(2) (808 SE2d 661) (2017). Further, "[t]he decisive factor is not the length of the deliberation, but the inability of the jury to agree on a verdict." *Johnson v. State*, 293 Ga. App. 32, 37 (5) (666 SE2d 452) (2008) (citation and punctuation omitted).

Here, the jurors deliberated over the course of two days, and on both days, indicated they were not able to reach a unanimous verdict. On the second day, after receiving a note from the jury that the numerical split remained unchanged, the trial

14

court gave the *Allen* charge and the jury resumed deliberations and returned with a unanimous verdict. Under the totality of these circumstances, we cannot find that the verdict was coerced or that the trial court abused its discretion in giving the *Allen* charge. See *Johnson*, supra; see also *Pendley v. State,* 283 Ga. App. 262, 263-264 (2) (641 SE2d 174) (2006) (trial court did not err in denying mistrial or giving *Allen* charge when jury stated twice over two days that it was deadlocked); *Albert v. State,* 180 Ga. App. 779, 78 (8) (350 SE2d 490) (1986) (no error in denying mistrial when jury announced twice over ten hours that it was deadlocked).

4. Lastly, Page asserts that he received ineffective assistance of trial counsel. To prevail on this claim, he must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington,* 466 U. S. 668, 687, 694 (104 SCt 2052) (LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." *Young v. State,* 292 Ga. 443, 445 (3) (738 SE2d 575) (2013). If Page fails "to satisfy either the 'deficient performance' or the 'prejudice' prong of the *Strickland* test, this Court is not required to examine the other." *Sifuentes v. State,* 293 Ga. 441, 445 (4) (746 SE2d 127) (2013).

(a) Page contends that trial counsel was ineffective in failing to strike a juror for cause after she admitted to personally knowing the District Attorney. "A juror's knowledge of, or relationship with, a witness, attorney, or party is a basis for disqualification only if it has created in the juror a fixed opinion of guilt or innocence or a bias for or against the accused." *Coe v. State,* 293 Ga. 233, 236 (2) (748 SE2d 824) (2013) (citation and punctuation omitted.) Here, during voir dire, a juror stated that the District Attorney lived in her neighborhood and she had seen her at the pool, but that they did not "talk on the phone or anything like that[.]" The same juror had already indicated she had no fixed opinion of guilt or innocence or a bias for or against the accused, and there is nothing in the record to suggest otherwise. Accordingly, Page is merely speculating that the juror was biased against him, and "speculation cannot serve as the basis of an ineffectiveness claim." *Dye v. State*, 266 Ga. App. 825, 827 (2) (a) (598 SE2d 95) (2004) (citation and punctuation omitted).

(b) Page argues that his trial counsel was ineffective for failing to object to a line of questioning in which the victim's aunt was asked about the impact the victim's disclosure had on the family. The aunt responded: "It has been a great impact. . . . I have had [the children] in counseling for three years. [The victim] is now opening up a lot more, . . . being sociable in school and things like that. They're not very trusting

16

you know." The aunt also agreed that the disclosure had impacted her relationship with her husband's family. Although Page's attorney objected to this line of questioning, he did not renew his objection or move for a mistrial. On appeal, Page argues that this sort of testimony is only admissible as victim impact evidence during the sentencing phase and thus his attorney rendered ineffective assistance in failing to renew his objection to its admission at trial or move for a mistrial.

Under Georgia law, evidence about the emotional impact of the crime on the victim, the victim's family, or the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial. See *Lucas v. State,* 274 Ga. 640, 43 (2) (b) (555 SE2d 440) (2001). This is because "background information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase." *Lofton v. State,* 309 Ga. 349, 363 (6) (b) (ii) (846 SE2d 57) (2020) (citation and punctuation omitted). Accordingly, an attorney may be found ineffective for failing to object to such testimony. See id. at 365.

Here, however, Page's attorney *did* object to the admission of the testimony. To the extent Page contends that his attorney was ineffective for failing to renew his objection or move for a mistrial, he must show that he was prejudiced by such failure,

which requires him to demonstrate that, but for counsel's deficiency, there is a reasonable probability that the outcome of his trial would have been different. See *Strickland*, 466 U. S. at 694 (III) (B). He has not carried this burden. First, the trial court instructed the jury that it was not permitted to be influenced by sympathy for either party, and generally we presume that juries follow the trial court's instructions. See *Allen v. State,* 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004). Second, we cannot say that the admission of the impact testimony—that the abuse disclosure was hard on the family and that the victim was in counseling—was sufficiently objectionable to warrant a mistrial. See *Hill v. State*, 310 Ga. 180, 189 (6) (850 SE2d 110) (2020) (trial court has discretion to grant a mistrial, and an appellate court will not interfere with that discretion unless a mistrial is essential to preserve the defendant's right to a fair trial). Since the trial court would not have been required to grant a mistrial, Page is unable to show he was prejudiced by his attorney's failure to move for mistrial. See id.

(c) Page argues his trial counsel was ineffective by failing to object or move for a mistrial when the State made improper closing arguments. Page alleges six separate statements were objectionable.

(i) Page challenges three statements the prosecutor made referencing the voir dire process. Specifically, the prosecutor told jurors: "[y]ou were all here during voir

18

dire when the question was asked, does anyone know a victim of sexual assault[;]" "I know that during voir dire we asked how many of y'all had been married[;]" and "[d]uring voir dire, a lot of y'all raised your hands[.]" Page is correct in asserting that what occurred during voir dire is not evidence and therefore should not be raised in closing argument. *Joseph v. State,* 231 Ga. App. 399, 403 (2) (498 SE2d 808) (1998). But the trial court instructed jurors that the statements of the attorneys during closing arguments were not evidence. Page has thus not shown a reasonable probability that the outcome of the trial court would have been different but for his attorney's failure to object to the statements. See *Sallee v. State*, 329 Ga. App. 612, 622 (8) (b) (765 SE2d 758) (2014).

(ii) According to Page, his attorney was ineffective in failing to object to the prosecutor's statement to jurors that their "job today is not to seek death. Your job is one thing, and that is to seek the truth, to seek the truth, to evaluate the evidence and seek the truth; not seek death." Page contends that this statement injected the issue of punishment, which a jury is not to consider in deciding guilt. Although the prosecutor should not have mentioned death, we find it improbable that such mention played any role in the jury's verdict. See *Tollette v. State*, 280 Ga. 100, 104 (8) (c) (621 SE2d 742) (2005) (although prosecutor should not have said that a "just punishment

19

under a lot of religions would be death" there is no reasonable probability that the argument contributed to the verdict). Furthermore, the judge instructed the jury that they were not to concern themselves with punishment.

(iii) Page contends his attorney was deficient in failing to object to the prosecutor's statement that "[t]he State's evidence has been unrebutted. No one has testified that this did not happen, no one." Page contends this argument constituted a comment on his constitutional right to remain silent and shifted the burden on him to prove his innocence. However, the Supreme Court has held that "a prosecutor may argue that the defendant has not rebutted or explained the State's evidence." *Arrington v. State,* 286 Ga. 335, 346 (16) (c) *(687 SE2d 438) (2009).

(iv) Finally, Page takes issue with the prosecutor's statement that "[t]he world is a dangerous place. Not because of those who do evil like Mr. Page, but because of those who stand by and do nothing." But Page does not articulate how this particular statement was objectionable. In any event, the statement appears to have been a general appeal "to enforce the criminal law for the safety of the community." *Nichols v. State,* 281 Ga. 483, 486 (2) (c) (640 SE2d 40) (2007). Thus, it does not establish a claim of ineffective assistance. See id.

*Judgment affirmed. McFadden, P. J., and Brown, J., concur*.